Coblentz
Patch Duffy
& Bass LLP

One Montgomery Street, Suite 3000
San Francisco, CA 94104-5500

T 415 391 4800

coblentzlaw.com

Ben Pulliam
D (415) 772-5778
bpulliam@coblentzlaw.com

August 26, 2025

Honorable Haywood S. Gilliam, Jr.
United States District Court
Courtroom 2 – 4th Floor
1301 Clay Street
Oakland, CA 94612

Re:     *Dr. Peter Attia v. Oura Ring Inc., et al.* | **Case No. 4:23-cv-03433-HSG Joint Discovery Letter**

Dear Judge Gilliam:

Plaintiff Dr. Peter Attia ("Plaintiff") and Defendants Oura Health Ltd. ("Oura Health") and Oura Ring, Inc. ("Oura Ring") (collectively, the "Parties") submit this joint discovery letter pursuant to the Court's Civil Standing Order. The Parties have met and conferred in good faith on the issues but could not reach a resolution. *See* Ex. 5.

I.     **Plaintiff's Position**

A.     **Defendants Have Not Provided Verified Responses to Any Interrogatories.**

None of Defendants' interrogatory responses (Oura Health Sets 1 and 2, Oura Ring Set 1) comply with the requirement that interrogatory answers be verified under oath. Fed. R. Civ. P. 33(b)(3) & (5). Plaintiff has raised this issue with Defendants on several occasions and Defendants have not yet provided verified responses. Plaintiff respectfully requests that Defendants be ordered to provide verified responses and/or verified supplemental responses.

B.     **Interrogatory 15 (Oura Health) and Interrogatory 10 (Oura Ring)**

**Interrogatory:** Describe all services provided or performed by PLAINTIFF for [OURA HEALTH/OURARING] or its subsidiaries.

**Response:** Defendant objects to the Interrogatory as vague and ambiguous in that it does not specify what type of information is sought regarding services allegedly performed by Plaintiff. Defendant objects to the Interrogatory as unduly burdensome. Defendant objects that the requested information should already be known to Plaintiff. Defendant reserves the right to amend this response in the future as new information is learned. Subject to but without waiving the foregoing, Defendant responds as follows: To Defendant's knowledge, Plaintiff did not provide or perform any such services.

Plaintiff was initially perplexed by Defendants' responses. There is ample documentary evidence of the services that Plaintiff provided for Defendants. For example, Defendants' CEO provided Plaintiff with a contract in 2019 acknowledging his past work and contemplating future

work for Defendants.  *See* Ex. 1 at 1.  Defendants' co-founder, President, and Chief Innovation Officer, Petteri Lahtela, wrote to Plaintiff, thanking him for his "support for us at Oura, being an investor and advisor as well as promoting Oura in several ways and occasions."  *See* Ex. 2 at 1. Oura Health's 2019 Shareholder agreement listed Plaintiff as a member of the company's medical advisory board.  *See* Ex. 3 at 2.  In their Answer, Defendants admit that in 2022, they "informed Dr. Attia that Defendants would not honor the options contract, but proposed they would provide [Dr. Attia] unspecified lesser monetary compensation for *past efforts*."  Answer to Second Amended Complaint ¶ 79 (emphasis added).  *See* Ex. 4 at 2.  Yet, Defendants' interrogatory responses contend that Plaintiff did not provide *any* services to either Defendant. *See* Ex. 6 at 10; Ex. 7 at 6.

Upon meeting and conferring on this issue, however, Plaintiff understands now that Defendants' responses are premised on an unreasonable reading of the interrogatories.  During the parties' meet and confer, Defendants purported to not understand what the term "services" means.  Defendants explained: (1) "services" can only mean services performed pursuant to a contract; (2) Defendants believe there was no contract; and (3) as a result, Plaintiff could not have performed any "services."  *See* Ex. 5 at 6.  This reading of the interrogatory is improper. First, Defendants did not object specifically to the word "services" as vague or ambiguous.[1] That objection has therefore been waived.  FRCP 33(b)(4).  Second, Defendants' esoteric understanding of the term "services" is not set out in the interrogatory itself and Defendants neglect to make any attempt to explain their understanding of the term "services" in their response. *See Santana Row Hotel Partners, L.P. v. Zurich Am. Ins. Co.*, No. 05-cv-00198 JW HRL, 2007 WL 1168677, at *3 (N.D. Cal. Apr. 18, 2007) (overruling objection because defendant could have "provid[ed] an answer based upon reason and common sense" and the party's papers indicated it did understand the terms).  Third, Defendants are aware of the meaning of "services" in this context because the Complaint describes in detail many of the services that Peter Attia provided from 2017 to 2022.  *See, e.g.*, ECF 75 ¶¶ 8-9, 30-33, 38, 43, 56-63.

None of Defendants' other objections have merit.  Defendants' burden objection is not stated with specificity.  FRCP 33(b)(4); *Gray v. Bank of Am. Nat'l Ass'n*, No. 09-cv-1091 SBA (JL), 2010 WL 11887276, at *9 (N.D. Cal. Apr. 12, 2010) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper . . . failure to offer specific support for such objections renders those objections inadequate and tantamount to not making any objection at all") (citations omitted).  Additionally, a party may not refuse to respond to a discovery request on the ground that the requested information is in the possession of the requesting party.  *Cf. Fosselman v. Gibbs*, No. 06-cv-0375 PJH (PR), 2008 WL 745122, at *4 (N.D. Cal. Mar. 18, 2008) (noting "the objection that information is equally available to the questioner is not a proper objection").

Plaintiff respectfully requests that Defendants be ordered to provide fulsome responses to Interrogatory 15 (Oura Health) and Interrogatory 10 (Oura Ring) describing the services that Plaintiff provided to Defendants.

---

[1] Defendants object that the interrogatory is vague and ambiguous "in that it does not specify what type of information is sought regarding services allegedly performed by Plaintiff."  It does not object to the term services.

### C.    Interrogatory 16 (Oura Health) and Interrogatory 11 (Oura Ring)

**Interrogatory:** Identify all officers, directors, and/or employees of [OURA HEALTH/OURARING] who were aware that PLAINTIFF was acting as an advisor and/or consultant to OURARING and/or OURA HEALTH prior to March 2022.

**Response:** Defendant objects to the undefined terms "advisor" and "consultant" as vague and ambiguous.  Defendant objects that it is unduly burdensome to require it to speak to every one of its officers, directors, and employees to identify which, if any, were aware that Plaintiff was "activing [sic] as an advisor and/or consultant to OURA HEALTH and/or its subsidiaries prior to March 2022."  Defendant reserves the right to amend this response in the future if additional information is learned.  Subject to but without waiving the foregoing, Defendant responds as follows: To Defendant's knowledge, Plaintiff did not provide or perform any such services.  See Ex. 6 at 10-11; Ex. 7 at 6-7.

Once again, Defendants' answer is not responsive and its objections lack merit.  First, Defendants' responses appear to answer a different question than the one posed.  Plaintiff asks for the identity of Oura officers and employees who were aware that Plaintiff was advising or consulting for the company.  The responses claim that Plaintiff "did not provide or perform any such services."[2]  Once again, these responses are premised on Defendants' belief that because they believe Plaintiff did not have a valid contract, he could not perform any advising or consulting work (or "services").  This is improper.  Defendants' vague and ambiguous objections are not stated with specificity and can be disregarded.  Defendants also provide no explanation in their response that they are interpreting these common terms in such a narrow manner.

Defendants' objection that the discovery is unduly burdensome is not legitimate and amounts to a contention that the Federal Rules are unduly burdensome.  Where a corporation is responding to interrogatories, it "must furnish the information available to the party."  FRCP 33(b)1(B).  Defendants are correct that this may require them to speak with their officers, directors, and employees.  That does not render the discovery unduly burdensome.  Second, Plaintiff has already provided Defendants with a list of people that were aware of Plaintiff's advising and consulting work for Defendants.  In his initial disclosures, Plaintiff identified over twenty officers, directors and employees of Defendants, whom Plaintiff contends were aware of "services provided by Plaintiff to Defendants."  Defendants are obligated to speak with those people to determine what they know.

Plaintiff respectfully requests that Defendants be ordered to provide fulsome responses to Interrogatory 16 (Oura Health) and Interrogatory 11 (Oura Ring) identifying people at Defendants that were aware of Plaintiff's work as an advisor and/or consultant for Defendants.

## II.    **Defendants' Position**

### A.    **Defendants Will Provide Verifications Shortly.**

The events at issue in this case took place more than three years ago, and some were as far back as nine years.  Most of the employees with relevant knowledge no longer work for Defendants.  As a result, it has taken Defendants longer than expected to compile the information needed to respond to Attia's discovery requests, and even longer to identify an appropriate person to verify the responses.  Defendants now intend to have Oura Health COO Michael Chapp provide the verifications this week.

---

[2] This response calls into serious question Defendants' contention that they do not know what the word "services" means as they use that word here unprompted.

**B.      Interrogatory 15 (Oura Health Oy) and 10 (Ouraring Inc)**

As a general matter, "interrogatories that require a party to make extensive investigations, research or compilation or evaluation of data for the opposing party are in many circumstances improper." *Gen. Cigar Co., Inc. v. Cohiba Caribbean's Finest, Inc.*, 2007 WL 983855, *3 (D. Nev. 2007); *see also Champion Power Equip. Inc. v. Firman Power Equip. Inc.*, No. CV-23-02371-PHX-DWL, 2025 WL 89740, at *2 (D. Ariz. Jan. 14, 2025) (quoting *Aktiebolaget Vargos v. Clark*, 8 F.R.D. 635, 636 (D.D.C. 1949)) ("An adverse party should not be required to perform burdensome labors or to execute difficult and expensive tasks, in searching for facts and classifying and compiling data. A litigant may not compel his adversary to go to work for him.").

These interrogatories go even further, because they require Defendants to adopt the premise of Attia's claims—that he performed "services" for Defendants—and then direct Defendants to spell out all the ways he did so. But as Defendants understand the term "services," it does not describe Attia's actions. Defendants have thus answered the interrogatory appropriately.

The interrogatory asks Defendants to describe what "services" Attia "provided or performed . . . for [Defendants]." The Oxford English Dictionary defines "service" first as "[t]he action of serving someone or something; performance of the duties, role, or function of a servant; work done in obedience to and for the benefit of a master, mistress, etc."[3]  Other, related definitions it provides also imply a master-servant, employer-employee, or customer-merchant relationship, with an expectation of "[r]eward for service, wages, payment." *Id.*[4] Similarly, Mirriam-Webster's first definition of the term is "the occupation or function of serving" or "employment as a servant."[5] Other dictionaries are in accord.[6] The implication is that there is a formal relationship in which one party performs actions for another based on a certain duty or expectation of compensation. That is what Attia claims he did for Defendants.

Defendants disagree. While there is evidence that Attia took certain actions relating to Oura Health—such as mentioning its product, the Oura Ring, in his newsletter—that does not mean he provided "services" to Defendants. Whether such actions amount to "services," under Defendants' understanding of the term, may depend on factors such as Attia's motivations for taking the actions, his communications with others about them, and the resulting benefits to each side. Those are likely to be disputed points in this case.

To give a more concrete illustration: assume that an attorney retains a court reporter for a particular case, and the court reporter does a good job. The attorney then gives the reporter a good review online and praises her in a social media post. Has the attorney provided "services" to the court reporter? Not under Defendants' understanding of that term.

Attia asserts that Defendants have interpreted "services" to mean only services performed under a contract. That is incorrect. Defendants understand the term to be broader,

---

[3] https://www.oed.com/dictionary/service_n1?tab=meaning_and_use#23371395. Technically, the dictionary begins by listing "senses relating to religious (mainly Christian) ritual or worship," but those are irrelevant here.

[4] While the dictionary also notes an alternative definition involving "helping or benefiting someone or something," it lists that meaning after the first.

[5] https://www.merriam-webster.com/dictionary/service

[6] *See, e.g.,* Cambridge Dictionary at https://dictionary.cambridge.org/us/dictionary/english/service; Collins Dictionary at https://www.collinsdictionary.com/us/dictionary/english/service.

but still to require embracing Attia's core theory as to liability. That said, to the extent that Attia *does* mean to refer to services under a contract, the fact that the contract at issue here (the "Option Agreement") was not signed by anyone from Defendants makes the issue even more debatable.

Separately, Defendants dispute that Attia performed any actions at all with respect to Ouraring Inc in particular. Ouraring is a wholly-owned subsidiary of Oura Health. The Option Agreement on which Attia's claims are based describes a relationship between only Attia and Oura Health—not Ouraring. However Attia's are characterized—as "services" or otherwise—they are not relevant to Ouraring.

Moreover, the interrogatory requires not only that Defendants accept that Attia performed certain actions with the expectation of compensation, but that Defendants search their files (including the records they have produced to Attia) to compile a list of such actions meeting this definition. Under Federal Rule of Criminal Procedure 33(d) and the authority discussed above, Defendants are not required to do so, particularly when Attia himself would necessarily have knowledge of his own actions.

In practice, Attia appears to be seeking requests for admission of certain allegations in his complaint. Had he described in neutral terms specific actions he alleges having taken (e.g., mentioning the Oura Ring in a social media post on a certain date), and asked Defendants to admit he took that action, Defendants could have investigated the issue and either admitted or denied with respect to each given action. But that is not the course Attia chose to take.

Attia, of course, may argue and seek to prove to the Court or to a jury what he did, and to argue that it entailed providing "services" to Defendants, to the extent that is relevant to his claims. Defendants are entitled to respond by arguing the contrary. Attia may not use a loaded interrogatory term to simply force Defendants to concede the point.

### C.    Interrogatory 16 (Oura Health Oy) and 12 (Ouraring Inc)

Once again, Attia's interrogatory presumes part of the premise of his case: that he was "acting as an advisor and/or consultant to" Defendants. But Defendants reject this premise. Again, while Attia took certain actions with respect to Oura Health, Defendants do not agree that they rendered him an "advisor" or "consultant" to the company. That certain Oura Health documents or communications may have used the term "advisor" in discussing him does not mean that he actually held any such title or position. That is a factual issue to be resolved through litigation.

To the extent that Attia objects that the interrogatory responses refer to "services," Defendants can amend them to state that "To Defendant's knowledge, Plaintiff did not act as an advisor or consultant to Defendant." If Attia disagrees with that statement, he may seek to introduce contrary evidence at a later stage of the case.  *See EVO Brands, LLC v. Al Khalifa Grp. LLC*, No. 2:22-CV-03909-AB-MAR, 2023 WL 5506883, at *5 (C.D. Cal. Aug. 17, 2023) ("The Court simply cannot compel different responses just because Xtra does not like or believe the ones Plaintiffs provide.").

/s/ Ben Pulliam
Ben Pulliam
Counsel for Plaintiff

/s/ Joshua Robbins
Joshua Robbins
Counsel for Defendants

# EXHIBIT 1

**From**: Harpreet [harpreet@ouraring.com]
**Sent**: 1/24/2019 7:21:13 PM
**To**: Peter Attia | **Redacted-PII** |
**Subject**: advisory shares
**Attachments**: Adviser Oura Health Option Agreement_ (US recipient) (ID 295172) - Peter Attia.pdf

here you go, you may want to consider state of residenice issues. not sure how far the TX move is in process etc..

Also re rings - can you have Mary place the order and i'll speed up. use my new code harpreet2019 for 75 off per ring

also let me know on the other ring you need for your patient

**OURA HEALTH OY / OURA RING INC. ADVISER EQUITY PLAN 2018**
**US STOCK OPTION AGREEMENT**

Optionee:                    Peter Attia ("Optionee" or "you")


This option is in conjunction with Peter Attia for his Medical Advisory role for Oura Ring. You will be concurrently awarded stock options for the following marketing services / commitments:

- Participation in advisory work in Oura's medical strategy to position itself as the leading wearable in the market from a scientific and medical perspective
- This includes medical study design and introductions to relevant researchers in the academic space to help Oura Ring being used in medical studies
- It's worth noting that you will commit at minimum 10 hours of your time per year in advisory work to the CEO, Board and other Medical Board members in helping form this strategy
- Promotion of Oura in your owned and operated social channels including your newsletter and podcast
- Introductions to other influencers / partners and potential investors for Oura Ring


The aggregate value of the option is 20,000 x €12.00 EUR per share which translates to a value of €240,000 EUR, which is worth $276,000.00 USD at an exchange rate of 1.15 USD to EUR.

For the avoidance of doubt, these options immediately vest upon a change of control or sale of the company.


**Number of Shares:**    20,000 shares

**Exercise Price:**    EUR  1.76 per share

**Grant Price:**    EUR  12.00 per share

**Date of Grant:**    January 25, 2019

**Vesting Start Date:**    Upon grant date, immediate vesting on change of control

**Type of Option:**    Incentive Stock Option        _____
                       Non-Statutory Option        ___x___

**Expiration Date of Option:**    __ December 31, 2023 _____

**Vesting:**    One half of the options vest immediately upon the grant date for prior advisory work, the remaining half vest over a 3 year period on a monthly basis

**Exercise After Termination:**    If your Adviser Status or other service relationship with Oura Health or one of its Subsidiaries Terminates for any reason, you will be entitled to exercise your vested Options as provided in Section 5(c) of the US Addendum unless otherwise provided below:

ATTIA0000611

Oura Health Oy US Stock Option Agreement
Page 2

_____

**Rights as a Stockholder:** The Option does not confer to you any rights as a stockholder of Oura Health until and unless you duly exercise all or a part of your Option and thereby become a stockholder with respect to the exercised Shares.

**Repurchase Option:** You irrevocably agree that the Option and the Shares issued to you pursuant to an exercise hereof are subject to restrictions on transfer as contained in applicable securities laws, the Plan, the Company's Articles of Association, and the terms and provisions (including rights of first refusal) of that certain shareholders agreement dated 17 April 2015 by and among various shareholders of the Company (the **SHA**), including the Share transfer restrictions and co-sale obligations set forth in Section 9 thereof. Upon your Termination, any Shares issued pursuant to the exercise of the Option shall be subject to a repurchase option in favor of the Company, whereby the Company may repurchase any or all such Shares at the fair market value of a Share, as determined by the Board of Directors, at the time of repurchase (the "**Repurchase Option**"). The Repurchase Option shall be exercisable by the Company within six (6) months after your Termination, or in the case of Shares issued upon exercise of the Option after such date of termination, within six (6) months after the date of such exercise. The Company may pay for Shares repurchased pursuant to the Repurchase Option with any form of consideration permissible under applicable law.

**Tax Consequences:** You understand and agree that you are solely responsible for determining and complying with your own tax consequences and requirements resulting from the issuance and potential exercise of the Option based on the tax laws that apply to you.

**The Plan:** You acknowledge that Oura Health has provided you with a copy of the Plan. Please review it carefully.

**Consent of Spouse:** If you are married and reside in the States of Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington, Wisconsin or any other State in which the laws of community property apply, you have obtained your spouse's consent in the form of Exhibit A hereto ("Consent of Spouse"), effective on the date hereof. Notwithstanding the execution and delivery thereof, such consent shall not be deemed to confer or convey to your spouse any rights in your Options or Shares underlying the Options that do not otherwise exist by operation of law or the agreement of the parties. If you should marry or remarry subsequent to the date hereof while residing in any of the aforementioned States, you will within thirty (30) days thereafter obtain your new spouse's acknowledgement of and consent to the existence and binding effect of all restrictions contained in the Plan and this Agreement by causing such spouse to execute and deliver a Consent of Spouse acknowledging the restrictions and obligations contained in this Agreement and the Plan, and agreeing and consenting to the same.

*(Signature Page Follows)*

2

ATTIA0000612

Oura Health Oy US Stock Option Agreement
Page 3


**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the Date of Grant noted above.


**COMPANY:**                                             **OPTIONEE:**

**OURA HEALTH OY**

By: _____           _____
Harpreet Rai, CEO                               Signature
                                                            Print Name:
                                                            **MANDATORY: Primary residence address:**

                                                            _____

                                                            _____

ATTIA0000613

Oura Health Oy US Stock Option Agreement
Page 4

**EXHIBIT A**

**CONSENT OF SPOUSE**

I, _____, spouse of _____, acknowledge that I have read the US Stock Option Agreement, dated as of _____ 2018, to which this Consent of Spouse is attached as <u>Exhibit A</u>, as well as the Oura Health Oy Adviser Equity Plan 2018 and the US Addendum. I am aware that these documents contain provisions regarding certain rights to certain other holders of equity securities of Oura Health Oy upon certain transfers of equity securities of Oura Health Oy which my spouse may own including any interest I might have therein.

I hereby agree that my interest, if any, in any shares of equity securities subject to the US Stock Option Agreement shall be irrevocably bound by such Agreement and the other Adviser Equity Plan 2018 documents, and further understand and agree that any community property interest I may have in such shares shall be similarly bound by the Agreement and the other Equity Plan documents.

I am aware that the legal, financial and related matters contained in the Agreement are complex and that I am free to seek independent professional guidance or counsel with respect to this Consent of Spouse.  I have either sought such guidance or counsel or determined after reviewing the Agreement carefully that I will waive such right.

Dated as of the __ day of _____, _____.


_____
Signature


_____
Print Name

ATTIA0000614

# EXHIBIT 2

**From**: Petteri Lahtela [petteri.lahtela@ouraring.com]
**Sent**: 7/1/2019 2:20:45 AM
**To**: Peter Attia [p@attiamedical.com]
**Subject**: Oura Health & potential intro to Dr. Tamsin Lewis
**Attachments**: Dr Tam - Wellgevity MD Bio..pdf

Hey Peter,

I hope you had a nice vacation.

Thanks for all you support for us at Oura, being an investor and advisor as well as promoting Oura in several ways and occasions.

Let me introduce myself - I am one of the co-founders of Oura Health and inventors of the Oura ring. I used to be the CEO until last summer but these days I am concentrating more on innovation, science, clinical research projects and future development of some interesting new use cases as well as B2B partnership cases.

It would be great to have a call with you some day to discuss in more detail and hear about your feedback and ideas related to Oura.

As you may know we've been collaborating with Dr Tamsin Lewis, whom I think you may already know on some level via social media. Tamsin is an MD and former Ironman Triathlete (winner) who runs a concierge medical service in central London with a focus on performance medicine and Healthspan. She shares many of your interests it seems!

Dr Tam is friends with Ben Greenfield (they competed in triathlon together). I met her back in 2016 at The Biohacker Summit in Finland. We began working closer together with her in 2017 and she introduced the Oura Ring to Prince Harry as well as other celebratory clientele.

I believe Tamsin is working with a strong team in London to build out a Mayfair London Longevity Clinic and would like to see whether you would like to be on the board and also to consider co-instructing the development of a training program for clinicians.

Her new website is under development as Dr Tam evolving professionally from the current Sportiedoc image. Please find her brief Bio attached.

I wonder if it would be ok for me to formally introduce her to you for potential next steps?
Also, if possible for you, it would actually be great to arrange a call between three of us to discuss further about Oura's next steps and Oura Teams platform i.e. how we at Oura could be of better help you both.

Related to the Medical Advisory Board of Oura Health, as you may know Dr. Stephen Friend (https://www.psych.ox.ac.uk/team/stephen-friend, he is an investor and board member) and you will be there and I thought Dr. Tam could be a good candidate there as well. I'd like to have your view on this as well.

I am looking forward to connecting with you and working with you in the context of Oura.

All the best,
Petteri

ATTIA0004276

**Petteri Lahtela**
Co-Founder, President & Chief Innovation Officer
Oura Health Ltd.
ouraring.com

**ŌURA**
LinkedIn | ŌURA
Facebook | ouraring
Instagram | ouraring
Twitter | @ouraring
YouTube | OURA

ATTIA0004277

# EXHIBIT 3

Execution copy

# AMENDED AND RESTATED

# SHAREHOLDERS AGREEMENT

**relating to**

**OURA HEALTH OY**

**8 October 2019**

ACTIVE/100486732.12

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

OURA0003058

**3.2.3**   **Remuneration and Costs; Insurance**

(a)   The remuneration, if any, paid to the members of the Board shall be decided annually by the General Meeting taking into consideration the financial standing of the Company. The Parties agree that no remuneration will be paid to members of the Board at least until the Company has been profitable for at least one financial year, unless necessary in connection with nominating external parties to the Board, in which case such parties may be entitled to a reasonable fee.

(b)   The Company shall reimburse reasonable travel expenses and accommodation to each Board member to one (1) Board meeting per year (and to two (2) Board meetings per year for Board members traveling from outside Europe). Unless the Board unanimously decides otherwise, no other travel costs or remuneration shall be paid to the Board members for participating in the Board meetings.

(c)   The Company shall use its commercially reasonable efforts to obtain, within ninety (90) days of the date hereof, from financially sound and reputable insurers Directors and Officers liability insurance in an amount and on terms and conditions satisfactory to the Board, including at least one (1) Series B Director then in office, and will use commercially reasonable efforts to cause such insurance policies to be maintained until such time as the Board, including at least one (1) Series B Director then in office, determines that such insurance should be discontinued.

**3.3**   **Managing Director**

(a)   The Managing Director shall be appointed by the Board. The Parties agree that Harpreet Rai shall continue to act as Managing Director as of the Effective Date in accordance with the provisions of the Companies Act, the Articles and the terms and conditions of his managing director agreement.

(b)   The Board shall plan the activities of the Company, organize the management of the Company and supervise the activities of the Managing Director.

**3.4**   **Auditors**

The Company shall have one (1) auditor who shall be elected by the General Meeting. The Parties agree that Ernst & Young Oy shall continue to act as the auditing company of the Company with Jari Karppinen as responsible auditor as of the Effective Date.

**3.5**   **Medical Advisory Board**

The Company shall have a medical advisory board to advise the Board and management. Unless otherwise determined by the Board acting unanimously, the medical advisory board will consist of Stephen Friend, Peter Attia and one (1) additional advisor to be designated by a majority vote of all Shareholders.

**3.6**   **Group Companies**

Any reference to a Qualified Matter in this Section 3 shall apply, mutatis mutandis, to each Group Company to the extent of the Company's right to decide upon or influence such matter, and for that purpose reference to terms as "Company", "Business", "Board" or "General Meeting" shall be construed as reference to such subsidiary or other legal entity, its business and the Board of Directors or General Meeting of such company.

ACTIVE/100486732.12

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                OURA0003075

**IN WITNESS WHEREOF**, the Parties hereto have duly executed this Agreement as of the day and year first above written.

**COMPANY:**

**OURA HEALTH OY**

DocuSigned by:

*Harpreet Rai*

605F80607492450

Name: Harpreet Rai
Title: Chief Executive Officer

*Signature page to Shareholders Agreement*

ACTIVE/100486732.12

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement as of the day and year first above written.

INVESTORS:



Signature Page to Amended and Restated Shareholders Agreement

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**IN WITNESS WHEREOF**, the Parties hereto have duly executed this Agreement as of the day and year first above written.



ACTIVE/100486732.12

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**IN WITNESS WHEREOF**, the Parties hereto have duly executed this Agreement as of the day and year first above written.



ACTIVE/100486732.12

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

OURA0003157

**IN WITNESS WHEREOF**, the Parties hereto have duly executed this Agreement as of the day and year first above written.

**SHAREHOLDERS:**



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**IN WITNESS WHEREOF**, the Parties hereto have duly executed this Agreement as of the day and year first above written.



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# EXHIBIT 4

BUCHALTER
A Professional Corporation
MATTHEW S. COVINGTON (SBN: 154429)
SAMUEL D. SAZER (SBN: 313037)
425 Market Street, Suite 2900
San Francisco, CA 94105
415.227.0900
mcovington@buchalter.com;
sazer@buchalter.com

JOSHUA M. ROBBINS (SBN: 270553)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612
949.760.1121
jrobbins@buchalter.com

MCMAHON SEREPCA LLP
PETER C. MCMAHON (SBN: 161841)
1900 S. Norfolk Street, Suite 350
San Mateo, CA 94403
650.637.0600
peter@msllp.com

Attorneys for Defendants
Ouraring Inc and Oura Health Oy

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| DR. PETER ATTIA,<br><br>      Plaintiff,<br><br>  vs.<br><br>OURA RING, INC., and OURA HEALTH LTD.,<br><br>      Defendants. | Case No. 4:23-cv-03433-HSG<br><br>**DEFENDANTS OURARING INC AND OURA HEALTH OY'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

BUCHALTER
A Professional Corporation
San Francisco

DEFENDANTS' ANSWER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT
BN 90979736v6

CASE NO. 4:23-cv-03433-HSG

79.     Admitted as to the first sentence. Denied as to the remainder.

80.     Denied.

81.     Defendants lack sufficient information to respond, and on that basis the assertions are denied.

## Oura Contends That the Agreement is Not Binding Due to Its
## Own Non-Compliance With Securities Laws

82.     Denied as to the first sentence. As to the rest of the assertions, Defendants did not file a US registration statement for Plaintiff's alleged options but deny that they "failed" to file a registration statement, as Defendants were not required to do so.  Defendants admit that they did not confirm whether Attia was an accredited option investor.  Defendants deny any implication that they were required to confirm whether Attia was an accredited investor.

83.     Denied.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
## (Breach of Contract / Specific Performance)

84.     This is a legal assertion that does not require a response.

85.     Denied.

86.     Denied.

87.     Denied

88.     Denied

## SECOND CAUSE OF ACTION
## (Quantum Meruit)

89.     This is a legal assertion that does not require a response.

90.     Denied.

91.     Denied.

92.     Admitted.

93.     Denied.

94.     Denied.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

DEFENDANTS' ANSWER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT
BN 90979736v6

CASE NO. 4:23-cv-03433-HSG

1.      That Plaintiff takes nothing by his First Amended Complaint against Ouraring and Oura Health;

2.      That Defendants be awarded their costs, including its attorneys' fees; and

3.      Such other and further relief as the Court may deem just and proper.

DATED:  July 25, 2025          BUCHALTER
A Professional Corporation


By: _____/s/ Matthew S. Covington_____
MATTHEW S. COVINGTON
JOSHUA M. ROBBINS
SAMUEL D. SAZER
Attorneys for Defendants
Ouraring Inc and Oura Health Oy


## **DEMAND FOR JURY TRIAL**

Defendants Ouraring Inc and Oura Health Oy hereby demand a jury trial in this action.

DATED:  July 25, 2025          BUCHALTER
A Professional Corporation


By: _____/s/ Matthew S. Covington_____
MATTHEW S. COVINGTON
JOSHUA M. ROBBINS
SAMUEL D. SAZER
Attorneys for Defendants
Ouraring Inc and Oura Health Oy

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

DEFENDANTS' ANSWER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT
BN 90979736v6

CASE NO. 4:23-cv-03433-HSG

# EXHIBIT 5

**From:** Robbins, Joshua <jrobbins@buchalter.com>
**Sent:** Friday, August 8, 2025 3:50 PM
**To:** Hamilton, Oliver W. <ohamilton@coblentzlaw.com>
**Cc:** Pulliam, Ben <bpulliam@coblentzlaw.com>; Peterson, Sarah <speterson@coblentzlaw.com>; Campbell, Evan <ecampbell@coblentzlaw.com>; Covington, Matthew S. <mcovington@buchalter.com>; Sazer, Samuel D. <ssazer@buchalter.com>; Peter McMahon <peter@msllp.com>
**Subject:** [EXTERNAL] RE: Attia v. Oura - Special Interrogatory Responses [IMAN-BN.FID5689649]

Oliver,

Please see responses below in **<span style="color:red">red</span>**. We will provide amended and verified interrogatory responses by Tuesday of next week. To be clear, we do not necessarily agree with your characterizations of Defendants' positions as stated in our August 4 call, but need not debate the point further for now.

Please make sure to copy Peter McMahon on future correspondence.

Best,
Josh

---

Josh and Sam,

Please see below for a summary of the parties' meet and confer call on August 4, 2025. As a preliminary matter, we have not received your verifications yet. Please provide the verifications and substantive responses to the points below by Friday, August 8, 2025. If the parties cannot reach agreement, we will send you our portion of a joint discovery letter brief next week.

## Oura Health Interrogatory Responses:

1. Interrogatory Nos. 1 and 2:

    1. Plaintiff's Position:

        1. ROG 1: We are entitled to a full listing of the membership of Oura Health's Board of Directors between 2017-2022.

2. ROG 2: With respect to the residences listed in Defendants' response, Defendants must specify whether the residences are the individuals' current residence, their residence from April 2018-March 2019, or some other time frame.

   1. Additionally, Plaintiff is entitled to the residences of Oura's Board of Directors from January 2017-April 2018, as well as April 2019-present.

2. Defendants' Position: The request is not proportional to the needs of the case, and the composition/residences of board members outside the present configuration and the April 2018-March 2019 Board of Directors are not relevant to Plaintiff's claims.

   - **We have produced or will produce records—including minutes and resolutions from board and shareholders meetings throughout that period—sufficient for Plaintiff to determine the membership of the board. Under Rule 33(d), this is sufficient. We will amend our response to Rog 1 accordingly.**

   - **While Defendants do not believe the information is relevant to any issue in this case, they will amend their response to provide board members' states/countries of residence in 2017 - 2022, to the extent they have access to that information.**

3. Next Steps: Defendants will discuss providing this information with their client.  Plaintiff requests that Defendants provide an update by August 8.

2. <u>Interrogatory Nos. 3-6</u>:

   1. Plaintiff's Position: Defendants have failed to adequately explain the investigation that forms the basis for their claim that they lack information.

   2. Defendants' Position: Defendants are not aware of authority requiring explanation of investigation.

   3. Next Steps:  Plaintiff provides the following authority in support of his position:  "A party answering interrogatories has an affirmative duty to furnish any and all information available to the party . . . The responding party must state under oath that he is unable to provide the information and must

describe the efforts he used to obtain the information." *Bryant v. Armstrong*, 285 F.R.D. 596, 612 (S.D. Cal. 2012) (citations omitted).

1. Based on the above authority, Plaintiff requests Defendants amend their response to explain their investigation or indicate they will not do so by August 8.

- Defendants' counsel led the efforts to obtain the information. Neither *Bryant* nor—to Defendants' knowledge—any other authority holds that Defendants must disclose attorney work product or privileged communications involved in seeking information to answer interrogatories. Moreover *Bryant*—which is not binding on the Court in this case— also states that "[t]he burden to establish control over the information sought is on the party seeking production." Id. at 606-07. Plaintiff has not established, nor even explained, why or how Defendants could be expected to determine where Mr. Rai was when he sent certain emails, or where he spent most of his time while working for Defendants. As we explained, defendants did not have any system in place that would have tracked Mr. Rai's whereabouts at any given time, and there is nothing in the emails indicating that anyone at Defendants other than Mr. Rai would have had that information.

3. Interrogatory No. 7:

1. Plaintiff's Position: Similar to ROGs 1 and 2, Mr. Shuman's primary residence(s) from 2017-2022 are necessary to test Defendants' argument regarding the application of Finnish law.

2. Next Steps: Similar to ROGs 1 and 2, Defendants will discuss the issue with their client.  Plaintiff requests that Defendants provide an update by August 8.

- While Defendants do not believe the information is relevant to any issue in this

> **case, they will amend their response to provide Mr. Shuman's state of residence during that period.**

4.  Interrogatory Nos. 8 and 9:

    1.  Plaintiff's Position: As above, Messrs. Chapp and Sweeney's primary residences are necessary to assess Defendants' choice of law argument.

    2.  Defendants' Position: Defendants assert that Chapp and Sweeney's residences cannot be relevant to a choice of law analysis seemingly because they are not members of the board of directors.

    3.  Next Steps: Plaintiff stands on its position that the information is relevant. There are numerous factors courts consider in a choice of law analysis, including where the contract was negotiated and/or assessment of a state's interest in application of its law. *See IBLC Abogados, S.C. v. Bracamonte*, No. 11-cv-2380-GPC-KSC, 2013 WL 3829401, at *6 (S.D. Cal. July 23, 2013). Therefore, Plaintiff requests that Defendants state whether they will amend their response by August 8. Otherwise, Plaintiff will presume the parties are at an impasse.

        - **While Defendants do not believe the information is relevant to any issue in this case, they will amend their response to provide Messrs. Chapp's and Sweeney's states of residence during that period.**

5.  Interrogatory Nos. 10 and 11:

    1.  Plaintiff's Position: Similar to the previous responses, this information is necessary to test Defendants' argument regarding the application of Finnish law.

    2.  Defendants' Position: The requests are ambiguous as to scope of information sought and how it would be calculated.

    3.  Next Steps: Defendants represented they will check to see if there is a simple answer to this question. If not, Plaintiff proposes that Defendants provide the number of employees located in California and Finland that were employed by Oura Health on January 1st for each year between 2017-2022.

> ▪ **While Defendants do not believe the information is relevant to any issue in this case, they will amend their response to provide it.**

6. <u>Interrogatory No. 14</u>:

   1. Plaintiff's Position: The request seeks factual support for the twelfth affirmative defense, but Defendants' response provides a vague conclusion that Plaintiff and Rai were put on notice that issuance of stock options would require approval from the board of directors.

   2. Defendants' Position: Defendants stated this notice was provided to Rai in unspecified written documents, and in emails/agreements provided to Plaintiff.

   3. Next Steps: Defendants will provide examples and specifics regarding this notice. Plaintiff requests that Defendants provide an update by August 8.

      > ▪ **Defendants will provide an amended response referencing relevant documents produced in discovery.**

7. <u>Interrogatory Nos. 15 and 16</u>:

   1. Defendants' Position: The requests are vague as to the term "services" and, by responding could imply that Defendants are admitting Dr. Attia provided services to them.

   2. Plaintiff's Position: The term "services" is not vague because, as Defendants' counsel admits, there are documents and emails detailing numerous services that Dr. Attia provided to Defendants.

      1. Moreover, the text of the interrogatory does not create the concern Defendants identified. It does not, for example, require Defendants to admit that Plaintiff provided services pursuant to the terms of the Option Agreement.

   3. Next Steps: Plaintiff asserts the parties are at an impasse with respect to these requests. If Defendants will amend their responses, please inform us by August 8.

- <span style="color:red">**Defendants will not amend their response. It is still not clear what Plaintiff means by providing or performing "services." Defendants' counsel did not "admit" that "there are documents and emails detailing numerous services that Dr. Attia provided to Defendants." If Plaintiff does not intend "services" to mean services performed in accordance with an agreement or in return for some expected consideration, then Defendants do not understand what Plaintiff is asking for, and are unable to provide a responsive "description" of such "services."**</span>

8. Interrogatory Nos. 17 and 18:

    1. Plaintiff's Position: There are numerous emails suggesting that the Oura Health Medical Advisory Board was formed prior to 2023.

    2. Defendants' Position: Although there were references to forming a Medical Advisory Board, Defendants maintain that one was not formally established until 2023.

    3. Next Steps: Pending further investigation, the parties may revisit the issue regarding the existence of the Medical Advisory Board.

        - <span style="color:red">**The Medical Advisory Board was not formed until 2023. See, e.g., https://www.businesswire.com/news/home/20230502005455/en/URA-Welcomes-Four-Experts-to-Newly-Appointed-Medical-Advisory-Board**</span>

**Oura Ring Interrogatory Responses**

9. Interrogatory No. 1:

    1. Plaintiff's Position: It is unclear from the response whether the four listed individuals are the only Oura Ring board members between 2017-2023.

2. Defendants' Position: There were no interim board members of Oura Ring between Lahtela and Kivela in 2017 and Kim and Shuman in 2023.

3. Next Steps: Defendants will confirm this understanding is correct.  Plaintiff requests that Defendants provide an update by August 8.

> - **Defendants confirm this understanding is correct.**

10.  <u>Interrogatory No. 2</u>:

1. Plaintiff's Position: For similar reasons to Oura Health Interrogatory No. 2, this information is relevant to evaluating Defendants' argument concerning the application of Finnish law.

2. Defendants' Position: Defendants' assert this information is not relevant under the internal affairs doctrine, and because the dispute had "crystalized" by 2023.

3. Next Steps: Plaintiff stands on its position that the information is relevant.  Therefore, Plaintiff requests that Defendants state whether they will amend their response by August 8.  Otherwise, Plaintiff will presume the parties are at an impasse.

> - **While Defendants do not believe the information is relevant to any issue in this case, they will amend their response to provide it.**

11.  <u>Interrogatory Nos. 3 and 4</u>:

1. Plaintiff's Position: Same as Plaintiff's position to Oura Health's responses to Interrogatory Nos. 3-6, Defendants have failed to provide adequate information regarding their investigation.

2. Defendants' Position: Defendants are unaware of whether there are means of tracking Mr. Rai's presence in the Oura Ring office(s).

3. Next Steps: Defendants will ask the client whether there are security measures or some other feature (e.g., computer/VPN login) that would

provide information regarding Mr. Rai's presence in the Oura Ring office(s). Plaintiff requests that Defendants provide an update by August 8.

- **Defendants have no means to determine how often Mr. Rai was in the Oura Ring office.**

12. <u>Interrogatory No. 5:</u>

1. Plaintiff's Position: Same position as Oura Health Interrogatory Nos. 10 and 11.

2. Defendants' Position: Same position as Oura Health Interrogatory Nos. 10 and 11.

3. Next Steps: Defendants will look to see if there is a simple answer to these requests. If not, Plaintiff proposes that Defendants provide the number of employees located in California that were employed by Oura Ring on January 1st for each year between 2017-2022.

- **While Defendants do not believe the information is relevant to any issue in this case, they will amend their response to provide it.**

13. <u>Interrogatory Nos. 10 and 11:</u>

1. Plaintiff's Position: Same position as Oura Health Interrogatory Nos. 15 and 16.

2. Defendants' Position: Same position as Oura Health Interrogatory Nos. 15 and 16.

3. Next Steps: Plaintiff asserts the parties are at an impasse with respect to these requests. If Defendants will amend their responses, please inform us by August 8.

- **See comments re Oura Health interrogatory Nos. 15 and 16, above.**

Buchalter

**Joshua M. Robbins**
Shareholder
**T** (949) 224-6284
**C** (617) 596-7556
jrobbins@buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio

---

**From:** Hamilton, Oliver W. <ohamilton@coblentzlaw.com>
**Sent:** Tuesday, August 5, 2025 12:10 PM
**To:** Robbins, Joshua <jrobbins@buchalter.com>; Sazer, Samuel D. <ssazer@buchalter.com>
**Cc:** Pulliam, Ben <bpulliam@coblentzlaw.com>; Peterson, Sarah <speterson@coblentzlaw.com>; Campbell, Evan <ecampbell@coblentzlaw.com>; Covington, Matthew S. <mcovington@buchalter.com>
**Subject:** Attia v. Oura - Special Interrogatory Responses

This message has originated from an **External Email**. Oliver W. Hamilton <ohamilton@coblentzlaw.com>:

---

Josh and Sam,

Please see below for a summary of the parties' meet and confer call on August 4, 2025. As a preliminary matter, we have not received your verifications yet. Please provide the verifications and substantive responses to the points below by Friday, August 8, 2025. If the parties cannot reach agreement, we will send you our portion of a joint discovery letter brief next week.

**Oura Health Interrogatory Responses:**
- Interrogatory Nos. 1 and 2:
  - Plaintiff's Position:
    - ROG 1: We are entitled to a full listing of the membership of Oura Health's Board of Directors between 2017-2022.
    - ROG 2: With respect to the residences listed in Defendants' response, Defendants must specify whether the residences are the individuals' current residence, their residence from April 2018-March 2019, or some other time frame.
      - Additionally, Plaintiff is entitled to the residences of Oura's Board of Directors from January 2017-April 2018, as well as April 2019-present.
  - Defendants' Position: The request is not proportional to the needs of the case, and the composition/residences of board members outside the present configuration and the April 2018-March 2019 Board of Directors are not relevant to Plaintiff's claims.
  - Next Steps: Defendants will discuss providing this information with their client. Plaintiff requests that Defendants provide an update by August 8.

- Interrogatory Nos. 3-6:
  - Plaintiff's Position: Defendants have failed to adequately explain the investigation that forms the basis for their claim that they lack information.

- o Defendants' Position: Defendants are not aware of authority requiring explanation of investigation.
- o Next Steps: Plaintiff provides the following authority in support of his position: "A party answering interrogatories has an affirmative duty to furnish any and all information available to the party . . . The responding party must state under oath that he is unable to provide the information and must describe the efforts he used to obtain the information." *Bryant v. Armstrong*, 285 F.R.D. 596, 612 (S.D. Cal. 2012) (citations omitted).
  - ▪ Based on the above authority, Plaintiff requests Defendants amend their response to explain their investigation or indicate they will not do so by August 8.

- Interrogatory No. 7:
  - o Plaintiff's Position: Similar to ROGs 1 and 2, Mr. Shuman's primary residence(s) from 2017-2022 are necessary to test Defendants' argument regarding the application of Finnish law.
  - o Next Steps: Similar to ROGs 1 and 2, Defendants will discuss the issue with their client. Plaintiff requests that Defendants provide an update by August 8.

- Interrogatory Nos. 8 and 9:
  - o Plaintiff's Position: As above, Messrs. Chapp and Sweeney's primary residences are necessary to assess Defendants' choice of law argument.
  - o Defendants' Position: Defendants assert that Chapp and Sweeney's residences cannot be relevant to a choice of law analysis seemingly because they are not members of the board of directors.
  - o Next Steps: Plaintiff stands on its position that the information is relevant. There are numerous factors courts consider in a choice of law analysis, including where the contract was negotiated and/or assessment of a state's interest in application of its law. *See IBLC Abogados, S.C. v. Bracamonte*, No. 11-cv-2380-GPC-KSC, 2013 WL 3829401, at *6 (S.D. Cal. July 23, 2013). Therefore, Plaintiff requests that Defendants state whether they will amend their response by August 8. Otherwise, Plaintiff will presume the parties are at an impasse.

- Interrogatory Nos. 10 and 11:
  - o Plaintiff's Position: Similar to the previous responses, this information is necessary to test Defendants' argument regarding the application of Finnish law.
  - o Defendants' Position: The requests are ambiguous as to scope of information sought and how it would be calculated.
  - o Next Steps: Defendants represented they will check to see if there is a simple answer to this question. If not, Plaintiff proposes that Defendants provide the number of employees located in California and Finland that were employed by Oura Health on January 1st for each year between 2017-2022.

- Interrogatory No. 14:
  - o Plaintiff's Position: The request seeks factual support for the twelfth affirmative defense, but Defendants' response provides a vague conclusion that Plaintiff and Rai were put on notice that issuance of stock options would require approval from the board of directors.
  - o Defendants' Position: Defendants stated this notice was provided to Rai in unspecified written documents, and in emails/agreements provided to Plaintiff.
  - o Next Steps: Defendants will provide examples and specifics regarding this notice. Plaintiff requests that Defendants provide an update by August 8.

- Interrogatory Nos. 15 and 16:
  - o Defendants' Position: The requests are vague as to the term "services" and, by responding could imply that Defendants are admitting Dr. Attia provided services to them.
  - o Plaintiff's Position: The term "services" is not vague because, as Defendants' counsel admits, there are documents and emails detailing numerous services that Dr. Attia provided to Defendants.

- ■ Moreover, the text of the interrogatory does not concern Defendants identified. It does not, for example, require Defendants to admit that Plaintiff provided services pursuant to the terms of the Option Agreement.
  - o Next Steps: Plaintiff asserts the parties are at an impasse with respect to these requests. If Defendants will amend their responses, please inform us by August 8.

- <u>Interrogatory Nos. 17 and 18:</u>
  - o Plaintiff's Position: There are numerous emails suggesting that the Oura Health Medical Advisory Board was formed prior to 2023.
  - o Defendants' Position: Although there were references to forming a Medical Advisory Board, Defendants maintain that one was not formally established until 2023.
  - o Next Steps: Pending further investigation, the parties may revisit the issue regarding the existence of the Medical Advisory Board.

## Oura Ring Interrogatory Responses
- <u>Interrogatory No. 1:</u>
  - o Plaintiff's Position: It is unclear from the response whether the four listed individuals are the only Oura Ring board members between 2017-2023.
  - o Defendants' Position: There were no interim board members of Oura Ring between Lahtela and Kivela in 2017 and Kim and Shuman in 2023.
  - o Next Steps: Defendants will confirm this understanding is correct. Plaintiff requests that Defendants provide an update by August 8.

- <u>Interrogatory No. 2:</u>
  - o Plaintiff's Position: For similar reasons to Oura Health Interrogatory No. 2, this information is relevant to evaluating Defendants' argument concerning the application of Finnish law.
  - o Defendants' Position: Defendants' assert this information is not relevant under the internal affairs doctrine, and because the dispute had "crystalized" by 2023.
  - o Next Steps: Plaintiff stands on its position that the information is relevant. Therefore, Plaintiff requests that Defendants state whether they will amend their response by August 8. Otherwise, Plaintiff will presume the parties are at an impasse.

- <u>Interrogatory Nos. 3 and 4:</u>
  - o Plaintiff's Position: Same as Plaintiff's position to Oura Health's responses to Interrogatory Nos. 3-6, Defendants have failed to provide adequate information regarding their investigation.
  - o Defendants' Position: Defendants are unaware of whether there are means of tracking Mr. Rai's presence in the Oura Ring office(s).
  - o Next Steps: Defendants will ask the client whether there are security measures or some other feature (e.g., computer/VPN login) that would provide information regarding Mr. Rai's presence in the Oura Ring office(s). Plaintiff requests that Defendants provide an update by August 8.

- <u>Interrogatory No. 5:</u>
  - o Plaintiff's Position: Same position as Oura Health Interrogatory Nos. 10 and 11.
  - o Defendants' Position: Same position as Oura Health Interrogatory Nos. 10 and 11.
  - o Next Steps: Defendants will look to see if there is a simple answer to these requests. If not, Plaintiff proposes that Defendants provide the number of employees located in California that were employed by Oura Ring on January 1st for each year between 2017-2022.

- <u>Interrogatory Nos. 10 and 11:</u>
  - o Plaintiff's Position: Same position as Oura Health Interrogatory Nos. 15 and 16.
  - o Defendants' Position: Same position as Oura Health Interrogatory Nos. 15 and 16.
  - o Next Steps: Plaintiff asserts the parties are at an impasse with respect to these requests. If Defendants will amend their responses, please inform us by August 8.

**Oliver Hamilton**
**Coblentz Patch Duffy & Bass LLP**
One Montgomery Street, Suite 3000
San Francisco, CA 94104
415-268-2592 | Office 415-391-4800
ohamilton@coblentzlaw.com
www.coblentzlaw.com

This transmittal is intended solely for use by its addressee, and may contain confidential or legally privileged information. If you receive this transmittal in error, please email a reply to the sender and delete the transmittal and any attachments.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

# EXHIBIT 6

1  **BUCHALTER**
   A Professional Corporation
2  MATTHEW S. COVINGTON (SBN: 154429)
   SAMUEL D. SAZER (SBN: 313037)
3  425 Market Street, Suite 2900
   San Francisco, CA 94105
4  415.227.0900
   mcovington@buchalter.com;
5  sazer@buchalter.com

6  BUCHALTER
   A Professional Corporation
7  JOSHUA M. ROBBINS (SBN: 270553)
   18400 Von Karman Avenue, Suite 800
8  Irvine, CA 92612
   949.760.1121
9  jrobbins@buchalter.com

10 **MCMAHON SEREPCA LLP**
   PETER C. MCMAHON (SBN: 161841)
11 1900 S. Norfolk Street, Suite 350
   San Mateo, CA 94403
12 650.637.0600
   peter@msllp.com
13
   Attorneys for Defendants
14 Ouraring Inc and Oura Health Oy

15

16

17                      **UNITED STATES DISTRICT COURT**

18                    **NORTHERN DISTRICT OF CALIFORNIA**

19                             **OAKLAND DIVISION**

20 DR. PETER ATTIA,                          Case No. 4:23-cv-03433-HSG

21          Plaintiff,                       **OURA HEALTH OY'S RESPONSES TO**
                                             **PLAINTIFF DR. PETER ATTIA'S**
22     vs.                                   **SECOND SET OF INTERROGATORIES**

23 OURA RING, INC., and OURA HEALTH
   LTD.,
24
            Defendants.
25

26          DESIGNATED AS CONFIDENTIAL PURSUANT TO
               STIPULATED PROTECTIVE ORDER
27

28

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

OURA HEALTH OY'S RESPONSES TO SECOND
SET OF INTERROGATORIES
BN 90879460v6

CASE NO. 4:23-cv-03433-HSG

PROPOUNDING PARTY:          Plaintiff DR. PETER ATTIA

RESPONDING PARTY:          Defendant OURA HEALTH OY

SET NO.:                              TWO (2)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Oura Health Oy ("Responding Party" or "Defendant") hereby responds to Plaintiff Dr. Peter Attia's ("Propounding Party" or "Plaintiff") Interrogatories, Set Two.

## PRELIMINARY STATEMENT

1.      These responses are made solely for the purpose of, and in relation to, this action. Further, these responses are based upon Responding Party's perception and understanding of the nature and type of information and documents requested, and upon the information presently known and available to Responding Party and its attorneys as of the time of the response. Each response is given subject to all appropriate objections which would require the exclusion of any statement contained herein if made by a witness present and testifying in court. All such objections and grounds therefore are reserved and may be interposed at the time of trial.

2.      Responding Party is pursuing its investigation and analysis of the facts and law relating to this case and has not completed its discovery or its preparation for trial. Therefore, the responses set forth herein are given without prejudice to Responding Party's right to produce evidence of any subsequent facts or interpretations thereof, or to add to, modify or otherwise change or amend the responses herein. These responses are based upon documents and information presently available to Responding Party. The information hereinafter set forth is true and correct to Responding Party's best knowledge as of this date, and is subject to correction for inadvertent errors, mistakes or omissions if any such errors, mistakes or omissions should be found to exist. References in response to a preceding or subsequent response incorporate both the information and objections set forth in the referenced response.

3.      Responding Party reserves the right to introduce at trial any and all evidence heretofore and hereinafter produced by the parties in this action or by any third party that supports or tends to support Responding Party's contentions at trial or in support of or in opposition to any motion in this case. To the extent that Responding Party identifies facts in response to the

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

OURA HEALTH OY'S RESPONSES TO SECOND
SET OF INTERROGATORIES
BN 90879460v6

CASE NO. 4:23-cv-03433-HSG

Interrogatories herein, it does so without prejudice to establish at a later date any additional facts that may be discovered as a result of any additional investigation and discovery.

4.    Responding Party reserves the right to object to the use and/or admissibility of any of the responses at the trial of this action, at any other proceeding, or in any other action or proceeding.

5.    Any response contained herein does not constitute a waiver of any applicable privilege, nor does any response contained herein waive any objection, including relevancy, to the admission of such responses or responsive documents in evidence.

6.    Except for explicit facts admitted herein, no incidental or implied admissions of any nature whatsoever are intended hereby, are implied, or should be inferred. The fact that an Interrogatory has been responded to herein should not be taken as an admission, or a concession of the existence of any facts set forth or assumed by the Interrogatories, or that such response constitutes evidence of any fact. In addition, the fact that Responding Party has responded to part or all of any Interrogatory is not intended and shall not be construed to be a waiver by Responding Party of all or any part of any objection to any Interrogatory.

7.    The responses contained herein are made on behalf of Responding Party only.

8.    Responding Party incorporates by reference this Preliminary Statement in each and every response set forth below.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all members of the OURA HEALTH Board of Directors and the years in which they served on the Board of Directors.

### RESPONSE TO INTERROGATORY NO. 1:

Defendant objects that the Interrogatory is unclear with respect to whether it seeks identification of former (as opposed to current) board members. Defendant objects to the Interrogatory as overbroad and unduly burdensome to the extent that it seeks identification of all current and former board members.

Subject to but without waiving the foregoing, Defendant responds as follows: Defendant's

3

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

OURA HEALTH OY'S RESPONSES TO SECOND
SET OF INTERROGATORIES
BN 90879460v6

CASE NO. 4:23-cv-03433-HSG

current board consists of the following individuals:

- Timo Ahopelto
- David Shuman
- Eurie Kim
- Dennis Durkin
- Thomas Hale
- Robert Goergen Jr.
- Thomas Templeton

From April 2018 until at least March 2019, Defendant's board of directors consisted of the following individuals:

- Kevin Lin
- Timo Ahopelto
- Petteri Lahtela
- Kari Kivelä
- Alain-Gabriel Courtines
- Harpreet Rai
- David Shuman
- Stephen Friend

The identities of board members at certain other times are reflected in minutes and resolutions of the board, which have been or will be produced in response to Plaintiff's requests for production of documents.

**INTERROGATORY NO. 2:**

Identify the state and country of the primary residence or residences for all members of the OURA HEALTH Board of Directors and the years that they resided there.

**RESPONSE TO INTERROGATORY NO. 2:**

Defendant objects that the residence of Defendant's directors at any time other than when the parties allegedly negotiated and signed the Option Agreement is not relevant to any issue in this case, and disclosure of that information would improperly invade those directors' privacy.

1 | *See Kaltwasser v. Cingular Wireless LLC*, 543 F. Supp. 2d 1124, 1130 n.4 (N.D. Cal. 2008)

2 | (holding that choice of law determination depends on "the parties' expectations *at the time of*

3 | *contract formation*") (emphasis added).

4 |       Subject to but without waiving the foregoing, Defendant responds as follows: From April

5 | 2018 until at least March 2019, Defendant's board of directors consisted of the following

6 | individuals, with country and state of residence indicated in parentheses:

7 |    ▪   Kevin Lin (California, United States)

8 |    ▪   Timo Ahopelto (Finland)

9 |    ▪   Petteri Lahtela (Finland)

10 |    ▪   Kari Kivelä (Finland)

11 |    ▪   Alain-Gabriel Courtines (London, United Kingdom)

12 |    ▪   Harpreet Rai (Pennsylvania, New Hampshire, and California, United States)

13 |    ▪   David Shuman (New York, United States)

14 |    ▪   Stephen Friend (Washington, United States)

15 | **INTERROGATORY NO. 3:**

16 |       Identify the state and country where Harpreet Rai was located when he sent the email

17 | described in Paragraph 46 of the First Amended Complaint.

18 | **RESPONSE TO INTERROGATORY NO. 3:**

19 |       Defendant does not have this information.

20 | **INTERROGATORY NO. 4:**

21 |       Identify the state and country where Harpreet Rai was located when he sent the OPTION

22 | AGREEMENT to Plaintiff in 2019.

23 | **RESPONSE TO INTERROGATORY NO. 4:**

24 |       Defendant does not have this information.

25 | **INTERROGATORY NO. 5:**

26 |       Identify the state and country of where Harpreet Rai was located when he sent the email

27 | described in Paragraph 71 of the First Amended Complaint.

28 | ///

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

5

OURA HEALTH OY'S RESPONSES TO SECOND
SET OF INTERROGATORIES
BN 90879460v6

CASE NO. 4:23-cv-03433-HSG

1    **RESPONSE TO INTERROGATORY NO. 5:**

2     Defendant does not have this information.

3    **INTERROGATORY NO. 6:**

4     Identify the location of the primary office where Harpreet Rai conducted work for OURA

5    HEALTH (or any OURA HEALTH subsidiary).

6    **RESPONSE TO INTERROGATORY NO. 6:**

7     To Defendant's knowledge, Mr. Rai primarily worked remotely, rather than in an office.

8    Defendant does not have sufficient information as to what location he spent the most time in.

9    **INTERROGATORY NO. 7:**

10    Identify the state and country of David Shuman's primary residence(s) from 2017 to 2022

11   and the years that he resided at each residence.

12   **RESPONSE TO INTERROGATORY NO. 7:**

13    Defendant incorporates its objections and responses to Interrogatory No. 3.

14   **INTERROGATORY NO. 8:**

15    Identify the state and country of Michael Chapp's primary residence(s) from 2017 to 2022

16   and the years that he resided at each residence.

17   **RESPONSE TO INTERROGATORY NO. 8:**

18    Defendant objects that Mr. Chapp's residence is not relevant to any issue in this case, and

19   disclosure of that information would improperly invade his privacy.

20   **INTERROGATORY NO. 9:**

21    Identify the state and country of Doug Sweeney's primary residence(s) from 2017 to 2022

22   and the years that he resided at each residence.

23   **RESPONSE TO INTERROGATORY NO. 9:**

24    Defendant objects that Mr. Sweeney's residence is not relevant to any issue in this case,

25   and disclosure of that information would improperly invade his privacy.

26   **INTERROGATORY NO. 10:**

27    State the number of employees of OURA HEALTH (or any OURA HEALTH subsidiary)

28   located in California in each of the years 2017, 2018, 2019, 2020, 2021, and 2022.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

6

**OURA HEALTH OY'S RESPONSES TO SECOND
SET OF INTERROGATORIES**
BN 90879460v6

CASE NO. 4:23-cv-03433-HSG

1  **RESPONSE TO INTERROGATORY NO. 10:**

2        Defendant objects that the number of its employees located in California at any time other

3  than when the parties allegedly negotiated and signed the Option Agreement is not relevant to any

4  issue in this case and would be unduly burdensome to compile. *See Kaltwasser v. Cingular*

5  *Wireless LLC*, 543 F. Supp. 2d 1124, 1130 n.4 (N.D. Cal. 2008) (holding that choice of law

6  determination depends on "the parties' expectations *at the time of contract formation*") (emphasis

7  added). Defendant objects to the undefined term "located in" as vague and ambiguous.

8        Subject to but without waiving the foregoing, Defendant responds as follows: As of the

9  February 2019, Defendant did not employ any individuals whose primary residence was in

10  California.

11  **INTERROGATORY NO. 11:**

12        State the number of employees of OURA HEALTH (or any OURA HEALTH subsidiary)

13  located in Finland in each of the years 2017, 2018, 2019, 2020, 2021, and 2022.

14  **RESPONSE TO INTERROGATORY NO. 11:**

15        Defendant objects that the number of its employees located in Finland at any time other

16  than when the parties allegedly negotiated and signed the Option Agreement is not relevant to any

17  issue in this case and would be unduly burdensome to compile. *See Kaltwasser v. Cingular*

18  *Wireless LLC*, 543 F. Supp. 2d 1124, 1130 n.4 (N.D. Cal. 2008) (holding that choice of law

19  determination depends on "the parties' expectations *at the time of contract formation*") (emphasis

20  added). Defendant objects to the undefined term "located in" as vague and ambiguous.

21        Subject to but without waiving the foregoing, Defendant responds as follows: As of

22  February 2019, Defendant employed approximately 49 individuals whose primary residence was

23  in Finland.

24  **INTERROGATORY NO. 12:**

25        State all facts supporting OURA HEALTH's first affirmative defense of "Finnish Law" as

26  pled in Defendants' Answer to the First Amended Complaint.

27  **RESPONSE TO INTERROGATORY NO. 12:**

28        Defendant objects to the Interrogatory as premature due to the fact that discovery is

7

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**OURA HEALTH OY'S RESPONSES TO SECOND
SET OF INTERROGATORIES**
BN 90879460v6                                                    CASE NO. 4:23-cv-03433-HSG

1  ongoing. Defendant reserves the right to amend this response in the future as new information is

2  learned.

3    Subject to but without waiving the foregoing, Defendant responds as follows:

4    Oura Health Oy is a Finnish company, formed in Finland under Finnish law by Finnish

5  nationals, and headquartered in Finland since its inception. Its foundational documents and its

6  agreements with its shareholders and other investors are explicitly governed by Finnish law, and

7  when it invites its shareholders to meetings at which they will discuss and vote on company

8  actions—including the issuance of stocks, options, or other securities of the company—it explains

9  that their approval is required by Finnish law. All Annual General Meetings and all Extraordinary

10  General Meetings of Oura Health's shareholders have been held in Finland in accordance with the

11  Limited Liability Companies Act of Finland. At the time that the Option Agreement was

12  allegedly negotiated and signed, 3 of 8 of Defendant's board members, and all of its employees,

13  resided in Finland.

14    Before signing the alleged option agreement described in the Complaint, Plaintiff was an

15  Oura Health shareholder and he had signed various agreements with the company explicitly

16  governed by Finnish law. These included the following: Series A Preferred Shares Investment

17  Agreement (dated 10/29/18), an Adherence and Amendment Agreement (4/27/18), an Adherence

18  Agreement (10/29/18), and an Amended and Restated Shareholders' Agreement. The

19  Shareholders' Agreement that Plaintiff signed stated that all options were to subject to an Equity

20  Plan. The Equity Plan in effect at the time Plaintiff allegedly entered into the option agreement

21  was expressly governed by Finnish law. The Equity Plan was also incorporated into the alleged

22  Option Agreement that Plaintiff has invoked in this case.

23    As a shareholder, Plaintiff also received email communications advising shareholders that

24  the issuance of securities (including options) was to be approved by shareholders and the Board

25  under Finnish law. Mr. Rai also informed Plaintiff that the Oura Health board of directors was to

26  issue rights regarding stock options under the Finnish Companies Act.

27    Additionally, Mr. Rai sent the alleged Option Agreement to Plaintiff without knowledge

28  of or approval by Oura Health's board of directors. Oura's board was not aware that Mr. Rai sent

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**OURA HEALTH OY'S RESPONSES TO SECOND
SET OF INTERROGATORIES**

CASE NO. 4:23-cv-03433-HSG

BN 90879460v6

the alleged Option Agreement to Plaintiff, or that Mr. Rai allegedly agreed to provide Plaintiff with stock options. The board never approved the issuance or grant of any options to Plaintiff as required under Finnish law, either before or after the alleged signing of the option agreement.

Lastly, Plaintiff is a Texas resident. His lawsuit filed in Texas (as Case No. D-1-GN-22-005587) asserted claims that are essentially the same as those asserted in this action. In the Texas lawsuit, Attia alleged that "Oura specifically engaged in business in Texas, and this lawsuit arises out of Defendant's contacts with Texas." Plaintiff further alleged that Oura "committed a tort in whole or in part in Texas [and] failed to perform a contract with a Texas resident even though the Texas resident was performing its end of the contract in Texas[.]" Thus, California does not have a significant interest in the application of its laws to this dispute.

**INTERROGATORY NO. 13:**

State all facts supporting OURA HEALTH's eleventh affirmative defense of "Invalid, Unenforceable Agreement" as pled in Defendants' Answer to the First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 13:**

Defendant incorporates its objections and responses to Interrogatory No. 13 above. In addition, Defendant sets forth the following facts:

- There has never been any registration statement in effect or filed, as described in 15 U.S.C. § 77e(a) and (c), as to the options described in the Option Agreement;

- No reasonable steps were taken to verify that Attia was an accredited investor, as required for an exemption under 17 CFR 506(c)(2)(ii);

- The stock options described in the Option Agreement did not meet the requirements for qualification under California Corporations Code §§ 25111 through 25113;

- The stock options described in the Option Agreement did not meet the requirements for exemption under Chapter 1 of the California Corporations Code, other than under § 25102(o); and

- If the Equity Plan 2016 had not been incorporated into the Option Agreement, the stock options would not have met the requirements for exemption under 15 U.S.C. § 77c, 17 CFR 230.701(c), or Corporations Code § 25102(o).

9

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

OURA HEALTH OY'S RESPONSES TO SECOND
SET OF INTERROGATORIES
BN 90879460v6

CASE NO. 4:23-cv-03433-HSG

1    **INTERROGATORY NO. 14:**

2        State all facts supporting OURA HEALTH's twelfth affirmative defense of "Lack of

3    Authority, Acts Outside Scope of Authority" as pled in Defendants' Answer to the First Amended

4    Complaint.

5    **RESPONSE TO INTERROGATORY NO. 14:**

6        Defendant incorporates its objections and responses to Interrogatory Nos. 13 and 14

7    above. In addition, Defendant's board of directors never approved the issuance of stock options to

8    Plaintiff. Plaintiff and Mr. Rai were also repeatedly put on notice that any issuance of stock

9    options would require such approval.

10    **INTERROGATORY NO. 15:**

11        Describe all services provided or performed by PLAINTIFF for OURA HEALTH or its

12    subsidiaries.

13    **RESPONSE TO INTERROGATORY NO. 15:**

14        Defendant objects to the Interrogatory as vague and ambiguous in that it does not specify

15    what type of information is sought regarding services allegedly performed by Plaintiff. Defendant

16    objects to the Interrogatory as unduly burdensome. Defendant objects that the requested

17    information should already be known to Plaintiff. Defendant reserves the right to amend this

18    response in the future as new information is learned.

19        Subject to but without waiving the foregoing, Defendant responds as follows: To

20    Defendant's knowledge, Plaintiff did not provide or perform any such services.

21    **INTERROGATORY NO. 16:**

22        Identify all officers, directors, and/or employees of OURA HEALTH who were aware that

23    PLAINTIFF was acting as an advisor and/or consultant to OURA HEALTH and/or its

24    subsidiaries prior to March 2022.

25    **RESPONSE TO INTERROGATORY NO. 16:**

26        Defendant objects to the undefined terms "advisor" and "consultant" as vague and

27    ambiguous. Defendant objects that it is unduly burdensome to require it to speak to every one of

28    its officers, directors, and employees to identify which, if any, were aware that Plaintiff was

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

OURA HEALTH OY'S RESPONSES TO SECOND
SET OF INTERROGATORIES
BN 90879460v6

CASE NO. 4:23-cv-03433-HSG

"activing as an advisor and/or consultant to OURA HEALTH and/or its subsidiaries prior to March 2022." Defendant reserves the right to amend this response in the future if additional information is learned.

Subject to but without waiving the foregoing, Defendant responds as follows: To Defendant's knowledge, did not provide or perform any such services.

**INTERROGATORY NO. 17:**

Identify all members of the OURA HEALTH medical advisory board from 2017 to 2022 and state the years served for each person identified.

**RESPONSE TO INTERROGATORY NO. 17:**

Defendant objects that the undefined term "medical advisory board" is vague and ambiguous.

Subject to but without waiving the foregoing, Defendant responds as follows: Defendant did not have a formal Medical Advisory Board until 2023. However, Defendant will produce its agreements with all members of the Medical Advisory Board.

**INTERROGATORY NO. 18:**

Identify any and all compensation (in any form) provided to each member of the OURA HEALTH medical advisory board from 2017 to 2022.

**RESPONSE TO INTERROGATORY NO. 18:**

Defendant objects that the undefined term "medical advisory board" is vague and ambiguous.

Subject to but without waiving the foregoing, Defendant responds as follows: Defendant did not have a formal Medical Advisory Board until 2023. However, Defendant will produce its agreements with all members of the Medical Advisory Board, which identify such members' compensation.

///

///

///

///

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

OURA HEALTH OY'S RESPONSES TO SECOND
SET OF INTERROGATORIES
BN 90879460v6

CASE NO. 4:23-cv-03433-HSG

1  DATED:  July 28, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A Professional Corporation

By: _____

MATTHEW S. COVINGTON
JOSHUA M. ROBBINS
SAMUEL D. SAZER
Attorneys for Defendants
Ouraring Inc and Oura Health Oy

BUCHALTER
A Professional Corporation
San Francisco

**OURA HEALTH OY'S RESPONSES TO SECOND
SET OF INTERROGATORIES**
BN 90879460v6

CASE NO. 4:23-cv-03433-HSG

1    **BUCHALTER**
     A Professional Corporation
2    MATTHEW S. COVINGTON (SBN: 154429)
     SAMUEL D. SAZER (SBN: 313037)
3    425 Market Street, Suite 2900
     San Francisco, CA 94105
4    415.227.0900
     mcovington@buchalter.com;
5    sazer@buchalter.com

6    JOSHUA M. ROBBINS (SBN: 270553)
     18400 Von Karman Avenue, Suite 800
7    Irvine, CA 92612
     949.760.1121
8    jrobbins@buchalter.com

9    **MCMAHON SEREPCA LLP**
     PETER C. MCMAHON (SBN: 161841)
10   1900 S. Norfolk Street, Suite 350
     San Mateo, CA 94403
11   650.637.0600
     peter@msllp.com
12
     Attorneys for Defendants
13   Ouraring Inc and Oura Health Oy

14

15

16

17                     **UNITED STATES DISTRICT COURT**

18                    **NORTHERN DISTRICT OF CALIFORNIA**

19                           **OAKLAND DIVISION**

20   DR. PETER ATTIA,                    Case No. 4:23-cv-03433-HSG

21              Plaintiff,               **CERTIFICATE OF SERVICE**

22        vs.

23   OURA RING INC and OURA HEALTH OY,

24              Defendants.

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 91901382v1

**CERTIFICATE OF SERVICE**

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is at Buchalter, A Professional Corporation, 425 Market Street, Suite 2900, San Francisco, CA 94105.

On the date set forth below, I served the foregoing document(s) described as:

- **OURARING INC'S RESPONSES TO PLAINTIFF DR. PETER ATTIA'S FIRST SET OF INTERROGATORIES [DESIGNATED AS CONFIDENTIAL PURSUANT TO STIPULATED PROTECTIVE ORDER]**
- **OURA HEALTH OY'S RESPONSES TO PLAINTIFF DR. PETER ATTIA'S SECOND SET OF INTERROGATORIES [DESIGNATED AS CONFIDENTIAL PURSUANT TO STIPULATED PROTECTIVE ORDER]**

| | |
|---|---|
| Richard R. Patch<br>Sabrina A. Larson<br>Benjamin C. Pulliam<br>Coblentz Patch Duffy & Bass LLP<br>One Montgomery Street, Suite 3000<br>San Francisco, CA 94104<br>Tel: 415.391.4800<br>Fax: 415.989.1663<br>Email: ef-rrp@cpdb.com;<br>     ef-szl@coblentzlaw.com;<br>     ef-bcp@cpdb.com | *Attorneys for Dr. Peter Attia* |
| Peter C. McMahon<br>McMahon Serepca LLP<br>1900 S. Norfolk Street, Suite 350<br>San Mateo, CA 94403<br>Tel: 650.637.0600<br>Fax:  650.637.0700<br>Email: peter@msllp.com | *Attorneys for Oura Health Oy, Ouraring Inc.* |

☑    **BY EMAIL**  On July 28, 2025, I personally electronically served from my electronic address cyu@buchalter.com in "PDF" format, the document(s) described above, to the individual(s) stated above to their known email/electronic addresses as shown above. The transmission was reported as complete and without error. (CCP §1010.6; CRC §2.251, *et seq.*)

I declare under penalty of perjury under the laws of the State of California, United States of America that the foregoing is true and correct to the best of my knowledge. Executed on July 28, 2025, at San Francisco, California.

_____
Caroline Yu

CERTIFICATE OF SERVICE

CASE NO. 4:23-cv-03433-HSG

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 91901382v1

# EXHIBIT 7

1  **BUCHALTER**
   A Professional Corporation
2  MATTHEW S. COVINGTON (SBN: 154429)
   SAMUEL D. SAZER (SBN: 313037)
3  425 Market Street, Suite 2900
   San Francisco, CA 94105
4  415.227.0900
   mcovington@buchalter.com;
5  sazer@buchalter.com

6  JOSHUA M. ROBBINS (SBN: 270553)
   18400 Von Karman Avenue, Suite 800
7  Irvine, CA 92612
   949.760.1121
8  jrobbins@buchalter.com

9  **MCMAHON SEREPCA LLP**
   PETER C. MCMAHON (SBN: 161841)
10 1900 S. Norfolk Street, Suite 350
   San Mateo, CA 94403
11 650.637.0600
   peter@msllp.com
12
   Attorneys for Defendants
13 Ouraring Inc and Oura Health Oy

14

15

16

17              **UNITED STATES DISTRICT COURT**

18            **NORTHERN DISTRICT OF CALIFORNIA**

19                  **OAKLAND DIVISION**

20 DR. PETER ATTIA,                        Case No. 4:23-cv-03433-HSG

21          Plaintiff,                     **OURARING INC'S RESPONSES TO
                                           PLAINTIFF DR. PETER ATTIA'S FIRST**
22     vs.                                 **SET OF INTERROGATORIES**

23 OURA RING, INC., and OURA HEALTH
   LTD.,
24
            Defendants.
25

26        <u>**DESIGNATED AS CONFIDENTIAL PURSUANT TO
          STIPULATED PROTECTIVE ORDER**</u>

27

28

**BUCHALTER**
A PROFESSIONAL CORPORATION
SAN FRANCISCO

PROPOUNDING PARTY:          Plaintiff DR. PETER ATTIA

RESPONDING PARTY:          Defendant OURARING INC

SET NO.:                    ONE (1)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Ouraring Inc ("Responding Party" or "Ouraring" "Defendant"), hereby responds to Plaintiff Dr. Peter Attia's ("Propounding Party" or "Plaintiff") Interrogatories, Set One.

## PRELIMINARY STATEMENT

1.      These responses are made solely for the purpose of, and in relation to, this action. Further, these responses are based upon Responding Party's perception and understanding of the nature and type of information and documents requested, and upon the information presently known and available to Responding Party and its attorneys as of the time of the response. Each response is given subject to all appropriate objections which would require the exclusion of any statement contained herein if made by a witness present and testifying in court. All such objections and grounds therefore are reserved and may be interposed at the time of trial.

2.      Responding Party is pursuing its investigation and analysis of the facts and law relating to this case and has not completed its discovery or its preparation for trial. Therefore, the responses set forth herein are given without prejudice to Responding Party's right to produce evidence of any subsequent facts or interpretations thereof, or to add to, modify or otherwise change or amend the responses herein. These responses are based upon documents and information presently available to Responding Party. The information hereinafter set forth is true and correct to Responding Party's best knowledge as of this date, and is subject to correction for inadvertent errors, mistakes or omissions if any such errors, mistakes or omissions should be found to exist. References in response to a preceding or subsequent response incorporate both the information and objections set forth in the referenced response.

3.      Responding Party reserves the right to introduce at trial any and all evidence heretofore and hereinafter produced by the parties in this action or by any third party that supports or tends to support Responding Party's contentions at trial or in support of or in opposition to any motion in this case. To the extent that Responding Party identifies facts in response to the

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

OURARING INC'S RESPONSES TO FIRST SET
OF INTERROGATORIES
BN 90879356v5                                    CASE NO. 4:23-cv-03433-HSG

Interrogatories herein, it does so without prejudice to establish at a later date any additional facts that may be discovered as a result of any additional investigation and discovery.

4.     Responding Party reserves the right to object to the use and/or admissibility of any of the responses at the trial of this action, at any other proceeding, or in any other action or proceeding.

5.     Any response contained herein does not constitute a waiver of any applicable privilege, nor does any response contained herein waive any objection, including relevancy, to the admission of such responses or responsive documents in evidence.

6.     Except for explicit facts admitted herein, no incidental or implied admissions of any nature whatsoever are intended hereby, are implied, or should be inferred. The fact that an Interrogatory has been responded to herein should not be taken as an admission, or a concession of the existence of any facts set forth or assumed by the Interrogatories, or that such response constitutes evidence of any fact. In addition, the fact that Responding Party has responded to part or all of any Interrogatory is not intended and shall not be construed to be a waiver by Responding Party of all or any part of any objection to any Interrogatory.

7.     The responses contained herein are made on behalf of Responding Party only.

8.     Responding Party incorporates by reference this Preliminary Statement in each and every response set forth below.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all members of the OURARING Board of Directors and the years in which they served on the Board of Directors.

**RESPONSE TO INTERROGATORY NO. 1:**

Defendant objects that the composition of its board of directors is not relevant to any claim in this action, which concerns a purported agreement for stock options in Oura Health Oy.

Subject to but without waiving the foregoing, Defendant responds as follows: As of October 17, 2017, Defendant's board of directors consisted of Petteri Lahtela and Kari Kivela. As of November 20, 2023, Defendant's board of directors consisted of Eurie Kim and David

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**OURARING INC'S RESPONSES TO FIRST SET OF INTERROGATORIES**
BN 90879356v5

CASE NO. 4:23-cv-03433-HSG

1 Shuman.

2 **INTERROGATORY NO. 2:**

3      Identify the state and country of the primary residence or residences for all members of

4 the OURARING Board of Directors and the years that they resided there.

5 **RESPONSE TO INTERROGATORY NO. 2:**

6      Defendant objects that the residences of the members of its board of directors are not

7 relevant to any claim in this action, which concerns a purported agreement for stock options in

8 Oura Health Oy.

9      Subject to but without waiving the foregoing, Defendant responds as follows: Petteri

10 Lahtela and Kari Kavela are residents of Finland.

11 **INTERROGATORY NO. 3:**

12      Identify the location of the primary office or offices where HARPREET RAI conducted

13 work for OURARING (or any OURARING subsidiary).

14 **RESPONSE TO INTERROGATORY NO. 3:**

15      To Defendant's knowledge, Mr. Rai primarily worked remotely, rather than in an office.

16 Defendant does not have sufficient information what location he spent the most time in.

17 **INTERROGATORY NO. 4:**

18      For any offices listed in response to Interrogatory No. 4, state the number of days by year

19 that HARPREET RAI was present in that office.

20 **RESPONSE TO INTERROGATORY NO. 4:**

21      Defendant does not have this information.

22 **INTERROGATORY NO. 5:**

23      State the number of employees of OURARING (or any OURARING subsidiary) located

24 in California in each of the years 2017, 2018, 2019, 2020, 2021, and 2022.

25 **RESPONSE TO INTERROGATORY NO. 5:**

26      Defendant objects that the number of its employees located in California at any time other

27 than when the parties allegedly negotiated and signed the Option Agreement is not relevant to any

28 issue in this case and would be unduly burdensome to compile. *See Kaltwasser v. Cingular*

4

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**OURARING INC'S RESPONSES TO FIRST SET
OF INTERROGATORIES**
BN 90879356v5

CASE NO. 4:23-cv-03433-HSG

*Wireless LLC*, 543 F. Supp. 2d 1124, 1130 n.4 (N.D. Cal. 2008) (holding that choice of law determination depends on "the parties' expectations *at the time of contract formation*") (emphasis added). Nor is such number relevant for the time period in which the parties allegedly negotiated and signed the Option Agreement, since the alleged Option Agreement purports to convey stock options for Oura Health, not for Ouraring. Defendant further objects to the undefined term "located in" as vague and ambiguous.

Subject to but without waiving the foregoing, Defendant responds as follows: Defendant's only U.S.-based employee in February 2019 was Harpreet Rai.

**INTERROGATORY NO. 6:**

State the number of employees of OURARING (or any OURARING subsidiary) located in Finland in each of the years 2017, 2018, 2019, 2020, 2021, and 2022.

**RESPONSE TO INTERROGATORY NO. 6:**

Defendant objects that the number of its employees located in Finland at any time other than when the parties allegedly negotiated and signed the Option Agreement is not relevant to any issue in this case and would be unduly burdensome to compile. *See Kaltwasser v. Cingular Wireless LLC*, 543 F. Supp. 2d 1124, 1130 n.4 (N.D. Cal. 2008) (holding that choice of law determination depends on "the parties' expectations *at the time of contract formation*") (emphasis added). Nor is such number relevant for the time period in which the parties allegedly negotiated and signed the Option Agreement, since the alleged Option Agreement purports to convey stock options for Oura Health, not for Ouraring. Defendant further objects to the undefined term "located in" as vague and ambiguous.

Subject to but without waiving the foregoing, Defendant responds as follows: None.

**INTERROGATORY NO. 7:**

State all facts supporting OURARING's first affirmative defense of "Finnish Law" as pled in Defendants' Answer to the First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 7:**

Defendant incorporates in full Oura Health's objections and responses to Interrogatory No. 13 served on Oura Health.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**OURARING INC'S RESPONSES TO FIRST SET OF INTERROGATORIES**
BN 90879356v5

CASE NO. 4:23-cv-03433-HSG

**INTERROGATORY NO. 8:**

State all facts supporting OURARING's eleventh affirmative defense of "Invalid, Unenforceable Agreement" as pled in Defendants' Answer to the First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 8:**

Defendant incorporates in full Oura Health's objections and responses to Interrogatory No. 14 served on Oura Health.

**INTERROGATORY NO. 9:**

State all facts supporting OURARING's twelfth affirmative defense of "Lack of Authority, Acts Outside Scope of Authority" as pled in Defendants' Answer to the First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 9:**

Defendant incorporates in full Oura Health's objections and responses to Interrogatory No. 15 served on Oura Health.

**INTERROGATORY NO. 10:**

Describe all services provided or performed by PLAINTIFF for OURARING or its subsidiaries.

**RESPONSE TO INTERROGATORY NO. 10:**

Defendant objects to the Interrogatory as vague and ambiguous in that it does not specify what type of information is sought regarding services allegedly performed by Plaintiff. Defendant objects to the Interrogatory as unduly burdensome. Defendant objects that the requested information should already be known to Plaintiff. Defendant reserves the right to amend this response in the future as new information is learned.

Subject to but without waiving the foregoing, Defendant responds as follows: To Defendant's knowledge, Plaintiff did not provide or perform any such services.

**INTERROGATORY NO. 11:**

Identify all officers, directors, and/or employees of OURARING who were aware that PLAINTIFF was acting as an advisor and/or consultant to OURARING and/or OURA HEALTH prior to March 2022.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

OURARING INC'S RESPONSES TO FIRST SET
OF INTERROGATORIES
BN 90879356v5

CASE NO. 4:23-cv-03433-HSG

1  **RESPONSE TO INTERROGATORY NO. 11:**

2          Defendant objects to the undefined terms "advisor" and "consultant" as vague and

3  ambiguous. Defendant objects that it is unduly burdensome to require it to speak to every one of

4  its officers, directors, and employees to identify which, if any, were aware that Plaintiff was

5  "activing as an advisor and/or consultant to OURA HEALTH and/or its subsidiaries prior to

6  March 2022." Defendant reserves the right to amend this response in the future if additional

7  information is learned.

8          Subject to but without waiving the foregoing, Defendant responds as follows: To

9  Defendant's knowledge, Plaintiff did not provide or perform any such services.

10  DATED:  July 28, 2025                              BUCHALTER
                                                        A Professional Corporation
11

12

13  By:  _____

14                                                  MATTHEW S. COVINGTON
                                                    JOSHUA M. ROBBINS
                                                    SAMUEL D. SAZER
15                                                  Attorneys for Defendants
                                                    Ouraring Inc. and Oura Health Oy
16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A Professional Corporation
San Francisco

**OURARING INC'S RESPONSES TO FIRST SET OF INTERROGATORIES**
BN 90879356v5

CASE NO. 4:23-cv-03433-HSG

1

**BUCHALTER**
A Professional Corporation
2   MATTHEW S. COVINGTON (SBN: 154429)
SAMUEL D. SAZER (SBN: 313037)
3   425 Market Street, Suite 2900
San Francisco, CA 94105
4   415.227.0900
mcovington@buchalter.com;
5   sazer@buchalter.com

6   JOSHUA M. ROBBINS (SBN: 270553)
18400 Von Karman Avenue, Suite 800
7   Irvine, CA 92612
949.760.1121
8   jrobbins@buchalter.com

9   **MCMAHON SEREPCA LLP**
PETER C. MCMAHON (SBN: 161841)
10   1900 S. Norfolk Street, Suite 350
San Mateo, CA 94403
11   650.637.0600
peter@msllp.com
12
Attorneys for Defendants
13   Ouraring Inc and Oura Health Oy

14

15

16

17                    **UNITED STATES DISTRICT COURT**

18                   **NORTHERN DISTRICT OF CALIFORNIA**

19                         **OAKLAND DIVISION**

20   DR. PETER ATTIA,                      Case No. 4:23-cv-03433-HSG

21              Plaintiff,                 **CERTIFICATE OF SERVICE**

22        vs.

23   OURA RING INC and OURA HEALTH OY,

24              Defendants.

25

26

27

28

# CERTIFICATE OF SERVICE

I am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action.  My business address is at Buchalter, A Professional Corporation, 425 Market Street, Suite 2900, San Francisco, CA  94105.

On the date set forth below, I served the foregoing document(s) described as:

- **OURARING INC'S RESPONSES TO PLAINTIFF DR. PETER ATTIA'S FIRST SET OF INTERROGATORIES [DESIGNATED AS CONFIDENTIAL PURSUANT TO STIPULATED PROTECTIVE ORDER]**
- **OURA HEALTH OY'S RESPONSES TO PLAINTIFF DR. PETER ATTIA'S SECOND SET OF INTERROGATORIES [DESIGNATED AS CONFIDENTIAL PURSUANT TO STIPULATED PROTECTIVE ORDER]**

| | |
|---|---|
| Richard R. Patch<br>Sabrina A. Larson<br>Benjamin C. Pulliam<br>Coblentz Patch Duffy & Bass LLP<br>One Montgomery Street, Suite 3000<br>San Francisco, CA 94104<br>Tel: 415.391.4800<br>Fax: 415.989.1663<br>Email: ef-rrp@cpdb.com;<br>　　　ef-szl@coblentzlaw.com;<br>　　　ef-bcp@cpdb.com | *Attorneys for Dr. Peter Attia* |
| Peter C. McMahon<br>McMahon Serepca LLP<br>1900 S. Norfolk Street, Suite 350<br>San Mateo, CA 94403<br>Tel: 650.637.0600<br>Fax:  650.637.0700<br>Email: peter@msllp.com | *Attorneys for Oura Health Oy, Ouraring Inc.* |

☑    **BY EMAIL**  On July 28, 2025, I personally electronically served from my electronic address cyu@buchalter.com in "PDF" format, the document(s) described above, to the individual(s) stated above to their known email/electronic addresses as shown above.  The transmission was reported as complete and without error.  (CCP §1010.6; CRC §2.251, *et seq.*)

I declare under penalty of perjury under the laws of the State of California, United States of America that the foregoing is true and correct to the best of my knowledge.  Executed on July 28, 2025, at San Francisco, California.

_____
Caroline Yu