1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    PETER ATTIA,                              Case No.  23-cv-03433-HSG  (LJC)

                   Plaintiff,
8
                                              **ORDER RESOLVING ECF NO. 114**
9         v.
                                              Re: Dkt. No. 114
10   OURARING INC., et al.,

11                 Defendants.

12

13        Before the Court is Plaintiff Dr. Peter Attia's and Defendants Oura Health Ltd. (Oura

14   Health)[1] and Oura Ring, Inc.'s joint discovery letter disputing whether Plaintiff may depose Oura

15   Health's Chief Legal Officer and Corporate Secretary, Avonte Campinha-Bacote, and whether Mr.

16   Campinha-Bacote must produce his communications with Defendants' board members and

17   employees.  ECF No. 114.  For the following reasons, Plaintiff's request to depose Mr. Campinha-

18   Bacote and for production of Mr. Campinha-Bacote's communications with current and former

19   employees and members of Defendants' Board is denied.

20   **I.    BACKGROUND**

21        Defendants are the entities behind Oura Ring, a wearable device that tracks users' health

22   metrics.  Plaintiff is a physician-turned-wellness-guru who alleges that he served as an advisor for

23   Defendants pursuant to an agreement with Defendants' former CEO, Harpreet Rai.  ECF No. 75

24   (Second Am. Compl.) ¶¶ 28, 36, 41.  Specifically, Plaintiff alleges that in October 2018, Mr. Rai

25   emailed Plaintiff to inform him that Defendants' Board approved issuing Plaintiff stock options

26

27   _____

[1] Defendants identify this entity as "Oura Health Oy" rather than "Oura Health Ltd."  *See* ECF No.
28   89 at 2.  "Oy" is apparently the Finnish translation of "Ltd."  *See* ECF No.  16-1 ¶ 2.  The Court
     refers to this entity as Oura Health.

United States District Court
Northern District of California

1    "equal to [Plaintiff's] previous total investments" in the company.  *Id.* ¶¶ 45-47.  Mr. Rai sent

2    Plaintiff a stock option agreement (Stock Option Agreement), which Plaintiff signed in February

3    2019.  *Id.* ¶¶ 49-50.  Plaintiff alleges that he continued to provide medical and technical advice to

4    Defendants and promoted Oura Ring products to his social media followers based on his

5    understanding that he would be compensated for his work pursuant to the Stock Option

6    Agreement.  *See Id.* ¶¶ 55, 61-69.  Mr. Rai left Defendants in December 2021, and, Plaintiff

7    alleges, Defendants have refused to honor the Stock Option Agreement.  *Id.* ¶¶ 73-80.  Defendants

8    allege, among other things, that their Board never agreed to the Stock Option Agreement, that the

9    Agreement is invalid under Finnish and American laws, and that Plaintiff is barred under the

10    doctrines of unclean hands and estoppel from recovering against them.  *See* ECF No. 89 (Am.

11    Answer to Second Am. Compl.) at 9-16.

12        Mr. Campinha-Bacote is Defendant Oura Health's Chief Legal Officer and Corporate

13    Secretary.  ECF No. 100-7 (Campinha-Bacote Decl.) ¶ 1.  He has held these positions since

14    January 2024.  *Id.*  He served as Oura Health's General Counsel from February 2020 to December

15    2023.  *Id.*  In his current role, he oversees "all of Oura Health's legal matters" and advises and

16    consults "with Oura Health's management and Board."  *Id.*  During the course of this litigation,

17    Mr. Campinha-Bacote has submitted two declarations: one in support of Defendants' motion to

18    compel arbitration (ECF No. 16-1), and one in support of Defendants' motion to retain their

19    Attorneys' Eyes-Only designation of certain documents (ECF No. 100-7).  In his declaration in

20    support of the motion to compel arbitration, Mr. Campinha-Bacote attested:

21           In my capacity as the General Counsel for the Defendants, I am aware
22           that in Plaintiff's Complaint he claims that on February 18, 2019, he
             signed and sent a copy of a document called "Oura Health Oy/Oura
23           Ring, Inc. Adviser Equity Plan 2018 US Stock Option Agreement"
             (hereinafter "Draft Agreement") to Defendants. (DKT # 1 -
24           Complaint, ¶ 50). However, I am also aware that the Draft Agreement
             was never authorized or approved by Oura Health Oy's (or Ouraring
25           Inc.'s) Board of Directors, and was never executed by anyone at either
             company.

26    ECF No. 16-1 ¶ 14.  In his declaration in support of the motion to retain the confidentiality

27    designation, Mr. Campinha-Bacote attested:

28           I am informed and believe that at various times in 2024, Dr. Attia

1

2

3

> baselessly accused a Board member of having a conflict of interest, and more generally accused Oura Health or its Board members of engaging in fraud. I and many members of the Board believe that Dr. Attia's accusations caused certain influential shareholders to withdraw support for a major Board initiative, which was detrimental to the company's interests.

4   ECF No. 107-3 ¶ 8.

5   Plaintiff argues that they must be permitted to depose Mr. Campinha-Bacote to question

6   him "about his personal knowledge of these allegations, and his communications with current and

7   former Board members and Oura employees about them," and that Mr. Campinha-Bacote should

8   be compelled to produce his "communications with current and former Board members and Oura

9   employees about these allegations." ECF No. 114 at 3. Defendants counter that there is no legal

10   basis for Plaintiff to depose Mr. Campinha-Bacote or obtain his confidential communications with

11   Defendants' Board. *Id.*

12   **II.    LEGAL STANDARD**

13   Federal Rule of Civil Procedure 30 provides that "[a] party … may depose any person."

14   Thus, there is no express prohibition against deposing attorneys. *See Graff v. Hunt & Henriques*,

15   No. C 08-0908, 2008 WL 2854517, at *1 (N.D. Cal. July 23, 2008). Defendants contend that

16   attorney depositions are nonetheless disfavored and urges the Court to apply the three-part test

17   established in *Shelton v. American Motors Corporation*, 805 F.2d 1323 (8th Cir. 1986), to

18   determine whether Mr. Campinha-Bacote's deposition may take place. ECF No. 114 at 3. The

19   *Shelton* test provides that for a court to allow an opposing trial counsel's deposition, the party

20   seeking to take the deposition must show that: "(1) no other means exist to obtain the information

21   than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3)

22   the information is crucial to the preparation of the case." 805 F.2d at 1327 (citation omitted).

23   This Court has applied *Shelton* to deny requests to depose opposing trial counsel. *See Serenity*

24   *Investments v. Sun Hung Strategic Capital*, No. 22-cv-01623, 2024 WL 517870, at *5 (N.D. Cal.

25   Feb. 9, 2024). Unlike in *Serenity Investments*, here Plaintiff seeks to depose and obtain documents

26   from Oura Health's Chief Legal Officer, not Defendants' trial counsel in the instant case. Absent

27   a showing that Mr. Campinha-Bacote has particular knowledge of Defendants' trial counsel's

28   litigation strategy, it is not clear why *Shelton* would apply. *See Textron Fin. Corp. v. Gallegos,*

United States District Court
Northern District of California

United States District Court
Northern District of California

1     No. 15cv1678, 2016 WL 4169128, at \*2 (S.D. Cal. Aug. 5, 2016) ("However, the *Shelton* test is

2     not necessarily applicable in a situation where the attorney sought to be deposed is not litigation

3     counsel in the pending case."); *Mass. Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 479 (N.D. Cal.

4     1998) (explaining the *Shelton* test before determining that it did not apply because the attorney at

5     issue "did not represent [Defendant] in this action").[2]

6          The Court instead applies the usual standards of Federal Rule of Civil Procedure 26.  Rule

7     26(b)(1) provides:

8          > Parties may obtain discovery regarding any nonprivileged matter that
          > is relevant to any party's claim or defense and proportional to the
9          > needs of the case, considering the importance of the issues at stake in
          > the action, the amount in controversy, the parties' relative access to
10         > relevant information, the parties' resources, the importance of the
          > discovery in resolving the issues, and whether the burden or expense
11         > of the proposed discovery outweighs its likely benefit."

12    The court must "limit the frequency or extent of discovery" if it determines that the information

13    sought is "outside the scope permitted by Rule 26(b)(1)" or is "unreasonably cumulative or

14    duplicative, or can be obtained from some other source that is more convenient, less burdensome,

15    or less expensive."  Fed. R. Civ. P. 26(b)(2)(C).  "The court may, for good cause, issue an order to

16    protect a party or person from annoyance, embarrassment, oppression, or undue burden or

17    expense."  Fed. R. Civ. P. 26(c)(1).

18    **III.    ANALYSIS**

19         Plaintiff seeks to question Mr. Campinha-Bacote about his statements that the Stock

20    Option Agreement "was never authorized or approved" by Defendants' Board and that he believes

21    Plaintiff's accusations against a Board member "caused certain influential shareholders to

22    withdraw support for a major Board initiative," as well as his "communications with current and

23    former Board members and Oura employees."  ECF Nos. 16-1 ¶ 14, 107-3 ¶ 8, 114 at 3.  Plaintiff

24    also seeks Mr. Campinha-Bacote's "communications with current and former Board members and

25

26    ───────────────
      [2]Although *Shelton* involved the deposition of the defendants' in-house counsel Rita Burns, Ms.
27    Burns "was assigned specifically to the case at bar" and was involved in preparing her client's
      defense in the action.  805 F.2d 1325, 1328.  The Eighth Circuit's holding concerned protecting
28    trial counsel from being forced "to testify as a witness" and reveal their "legal theories and
      strategy" in the pending case.  *Id.* at 1327.

4

United States District Court
Northern District of California

1    Oura employees," which Defendants have objected to producing on the basis of attorney-client

2    privilege.  ECF Nos. 114 at 3, 114-1 at 3-4.

3              Plaintiff has not shown that Mr. Campinha-Bacote, who joined Defendants in 2020, would

4    have relevant information regarding whether the Board "authorized or approved" the Stock Option

5    Agreement, which Plaintiff alleges he received and signed in early 2019.  ECF No. 16-1 ¶ 14; *see*

6    Second Am. Compl. ¶¶ 49-50.  But even accepting that Plaintiff seeks relevant information,

7    Defendants have shown that obtaining discovery from Mr. Campinha-Bacote is otherwise

8    improper under Rule 26.  Defendants object that the discovery Plaintiff seeks is protected by

9    attorney-client privilege.  *See* ECF No. 114 at 3; 114-1 at 3-4.  Plaintiff does not dispute that the

10    information he seeks is privileged, instead arguing that Mr. Campinha-Bacote waived this

11    privilege by submitting the two declarations.  ECF No. 114 at 2.  Plaintiff claims:

> Campinha-Bacote and Oura voluntarily submitted declarations
> regarding the Board's knowledge as to Attia's option agreement and
> Oura's accusations that Attia "undermined" and "interfered" with the
> Board, and caused the failure of a "major Board initiative." These
> statements go to the heart of Oura's defenses, and Campinha-Bacote
> has obviously communicated with the Board about these matters. By
> submitting his declarations, Oura waived its privilege as to those
> communications.

17    *Id.*  As the Court has diversity jurisdiction over this case, California law regarding the existence

18    and scope of attorney-client privilege applies.  *In re California Pub. Utilities Comm'n*, 892 F.2d

19    778, 781 (9th Cir. 1989) ("In diversity actions, questions of privilege are controlled by state

20    law."); Fed. R. Evid. 501 (establishing that in civil cases, "state law governs privilege regarding a

21    claim or defense for which state law supplies the rule of decision"); *see* Second Am. Compl. ¶ 6

22    (alleging that the Northern District has diversity jurisdiction over this action).  The Court

23    accordingly applies California law to determine if there has been a waiver of attorney-client

24    privilege.[3]

25

26    [3] In contrast, if the Court determines that there has been a waiver, it would consider federal law to
determine the scope of the waiver.  *See Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285

27    F.R.D. 468, 471 n.2 (N.D. Cal. 2012) ("The Federal Rules of Evidence govern the scope of waiver
even if state law provides the rule of decision.").  Federal Rule of Evidence 502 applies "to

28    disclosure of a communication or information covered by the attorney-client privilege."  Rule
502(a) provides that if a "disclosure" of attorney-client communication "is made in a federal

United States District Court
Northern District of California

1    Under California law, attorney-client privilege "may be waived impliedly or by disclosure

2    of the subject communication." *Transamerica Title Ins. Co. v. Superior Ct.*, 188 Cal. App. 3d

3    1047, 1052 (1987).  California Evidence Code Section 912(a) provides that the right of any person

4    to claim attorney-client privilege "is waived with respect to a communication protected by the

5    privilege if any holder of the privilege, without coercion, has disclosed a significant part of the

6    communication or has consented to disclosure made by anyone."  "What constitutes a significant

7    part of the communication is a matter of judicial interpretation." *Transamerica*, 188 Cal. App. 3d

8    at 1052.  "Privileged communications do not become discoverable simply because they are related

9    to issues raised in the litigation." *Id.* at 1053; *see Garcia v. Progressive Choice Ins. Co.*, No. 11-

10   CV-466, 2012 WL 3113172, at *4 (S.D. Cal. July 30, 2012) (quotation marks omitted) ("[A]

11   waiver under Evidence Code section 912 relates to the particular communication which has been

12   revealed and not to all communications concerning the subject matter of the lawsuit.").  Privilege

13   may be waived by implication if the holder of the privilege "has put the otherwise privileged

14   communication directly at issue and that disclosure is essential for a fair adjudication of the

15   action." *S. Cal. Gas Co. v. Pub. Utils. Comm'n*, 50 Cal. 3d 31, 40 (1990). Plaintiff contends that

16   Mr. Campinha-Bacote's statements in his declarations—that he was "aware" that the Stock Option

17   Agreement was never approved and that he was "informed" and "believed" that Plaintiff had tried

18   to undermine the Board—amount to a waiver of attorney-client privilege regarding his

19   communications with Defendants regarding these topics.  ECF No. 114 at 2.  Plaintiff's claim that

20   "Campinha-Bacote has obviously communicated with the Board about these matters"

21   ———————————————

22   proceeding … and waived the attorney-client privilege or work-product protection," privilege as to
     undisclosed communication or information is also waived if "(1) the waiver is intentional; (2) the

23   disclosed and undisclosed communications or information concern the same subject matter; and
     (3) they ought in fairness to be considered together."  Rule 502(f) provides that, "notwithstanding

24   Rule 501, Rule 502 applies even if state law provides the rule of decision."  Although Rule 502
     has been interpreted to establish that "the question of whether [attorney-client privilege] is waived

25   is governed by federal law," this Court reads Rule 502(a) as limiting the *scope* of a waiver of
     attorney-client privilege, not as determining if there has been a waiver in the first instance.

26   *AdTrader, Inc. v. Google* LLC, 405 F. Supp. 3d 862, 866 (N.D. Cal. 2019).  That is, if otherwise
     privileged material is disclosed, that disclosure would only waive additional, undisclosed

27   communications if the three criteria of Rule 502(a) were met.  *See* Rule 502 (Advisory Committee
     Notes) ("Subdivision (a) provides that if a waiver is found, it applies only to the information

28   disclosed, unless a broader waiver is made necessary by the holder's intentional and misleading
     use of privileged or protected communications or information.").

United States District Court
Northern District of California

1    notwithstanding, Plaintiff does not identify any specific "communications" Mr. Campinha-Bacote

2    disclosed or otherwise put at issue that could have waived privilege. *Id.* Mr. Campinha-Bacote's

3    general statements that he is aware of Defendants' main defenses in this action does not constitute

4    a waiver of attorney-client privilege regarding his communications with Defendants. Furthermore,

5    as discussed below, as Plaintiff has or will be deposing several of Defendants' Board members

6    and will be able to question them about the Stock Option Agreement and Plaintiff's relationship

7    with the Board, there is no indication deposing Mr. Campinha-Bacote "is essential for a fair

8    adjudication of the action," particularly in light of Defendants' agreement not to rely on Mr.

9    Campinha-Bacote's testimony at summary judgment or trial. *S.Ca. Gas Co.*, 50 Cal. at 40.

10         In addition to determining that Plaintiff has not demonstrated Mr. Campinha-Bacote

11   waived attorney-client privilege with regard to his communications with Defendants' Board and

12   employees, the Court finds that the discovery Plaintiff seeks from Mr. Campinha-Bacote is not

13   "proportional to the needs of the case" and may be "obtained from some other source that is …

14   less burdensome." Fed. R. Civ. P. 26(b). As Defendants argue, Plaintiff has deposed or will

15   depose two current directors of Oura Health's Board (both of whom joined the Board before Mr.

16   Campinha-Bacote started working for Defendants), Oura Health's COO and former acting CEO,

17   and Defendants' 30(b)(6) witness. ECF No. 114 at 4. Plaintiff has also noticed subpoenas on

18   other former Board members. *Id.* As Defendants acknowledge, information regarding

19   Defendants' claim that Plaintiff has allegedly attempted to undermine the Board and whether Oura

20   Health's Board knew of or approved the Stock Option Agreement are both "certainly important to

21   this case." *Id.* at 5. But Defendants will be able to obtain information regarding these "important"

22   issues from other witnesses and there is no indication that Mr. Campinha-Bacote has non-

23   duplicative, non-privileged information that is important to advance the litigation.

24         Plaintiff's requests to depose Mr. Campinha-Bacote and for Defendants to produce Mr.

25   Campinha-Bacote's "communications with current and former Board members and Oura

26   employees about" the allegations in Mr. Campinha-Bacote's declarations are accordingly denied.

27   This denial is without prejudice to Plaintiff renewing his request if subsequent discovery reveals

28   that Mr. Campinha-Bacote has non-privileged communications or documents that are relevant to

1  this case and not unreasonably cumulative or duplicative, or if Plaintiff identifies "particular

2  communication[s]" that waived attorney-client privilege.  *Garcia*, 2012 WL 3113172, at *4.

3     To ameliorate concerns regarding fairness, the Court holds Defendants to their agreement

4  to "not rely on any testimony from Mr. Campinha-[Bacote] regarding the validity of the [Stock]

5  Option Agreement" or "regarding Plaintiff's friction with the board at summary judgment or at

6  trial."  ECF Nos. 114 at 5, 114-2 at 2.

7     **IT IS SO ORDERED.**

8  Dated: October 21, 2025

10
_____
LISA J. CISNEROS
11  United States Magistrate Judge

*United States District Court*
*Northern District of California*

8